TURNER, *per pro ami*, VS THROWER.

## Points as to sales of fugitive slaves, by Sheriffs.

1. That part of the act of eighteen hundred and nine, "res-pecting runaway slaves committed to jail,"* which re-quires publication of the commitment of the slave in some newspaper,—contemplates a number of publications, limi-ted to the number of papers, published during the period, between the period of first publication, to the expiration of the six months after commitment.

2. And the *onus* of proof, that publication in a case of this character, had been made as often as it could have been, within the six months,—rests upon the party claiming ti-tle, under a sale of such runaway slave, by the sheriff.

3. So, where in detinue for a slave, the defendant claimed title, through a sale made by the sheriff, under this statute, and showed a publication to a time, within a few days of the expiration of the six months, after the first publication of commitment—it was held, that as the defendant did not prove that the publication *was made as often as the paper was* published, there was a failure to prove the publication as required by the act.

4. The notice of the sale of any fugitive slave, under this sta-tute, should be given for thirty days, *after the expiration of the six months*, from the first publication of the commit-ment: and the sheriff has no authority to advertise a sale until this period has elapsed.

5. And it is not sufficient that this notice of sale be given through a newspaper. It should, as required by the act, be made uniformly, by publication in a newspaper, at the Court house of the proper county, and at two other public places within the county.

6. Every act, required of a sheriff in making sale of a fugitive slave, under this statute, is a constituent part of the title,

*Aikin's Digest, 395, §25.

vested in the purchaser; and to render such title valid, proof of each requirement, must be made by the party setting up title under the sale.

7. The effect of the proviso of this statute, upon sales under it, is confined to sales where the requisitions of the act have been complied with.

In error to the Circuit Court of Mobile county.

This was an action of detinue by Turner, as next friend, in the Circuit Court of Mobile county, for the recovery of a slave. The plea was *non detinet*; and under it, by the verdict of a jury, judgment was rendered for the defendant.

On the trial, a bill of exceptions was taken, which disclosed the following facts, to wit:

The plaintiff offered evidence, conducing to prove title in James Turner, and possession by defendant, his value, the value of his services, and a demand, and refusal.

The defendant sat up title, under the sale of the slave, by the sheriff of Mobile county, as a runa-way; and in support of that title, proved a warrant of commitment to have been issued on the thirteenth day of March, eighteen hundred and thirty-three, and the commitment of the slave under the same, and that the said warrant was lost. He then produced and proved an advertisement in the Mobile Commercial Register, dated, ninteenth of March, eighteen hundred and thirty-three; a copy of which, was in the words and figures following, to wit:

"Committed to the jail of Mobile county, on the 13th inst. by Benjamin Wilkins, Esq. a justice of the peace, in and for said county, as a runaway slave, a negro man, who calls his name William Thomp-

son, and says he is free, and that he came from the State of Virginia, as the servant of a Mr. Thompson: said slave is five feet, four or five inches high, twenty-five or thirty years of age, black, and has a number of small scars on his face. His owner is requested to come forward, prove property, pay costs and charges, and take him away, otherwise he will be sold according to the statute, in such case made and provided, to pay jail fees.

March 19, 1833.

J. BATES, jr. Sh'f. Mo. co."

This advertisement, and none other, was continued to be published in said paper, from the nineteenth day of March, eighteen hundred and thirty-three, as aforesaid, until the fourteenth day of September, eighteen hundred and thirty-three, and no longer.

Defendant then produced and proved, an advertisement, dated and published on the fourteenth day of September, eighteen hundred and thirty-three, in the words and figures which follow:

"Notice is hereby given, that the negro man, named William Thompson, committed as a runaway slave by Benjamin Wilkins, Esquire, a justice of the peace for Mobile county, on the 13th March, 1833, having remained in the jail of said county, for six months, and not having been claimed by any person, will on the 14th October next, at the Court House of Mobile county, at the hour of 12 o'clock, M. be sold in pursuance of law, to pay jail fees, and other expenses.

JOS. BATES, jr. Sh'ff Mob. co.

September 14, 1833."

This last advertisement was followed by the one subjoined, to wit:

"The above sale is postponed until Monday, 21st October, inst.       JOS. BATES, Sh'ff Mob. co. October 12, 1833."

The notices last above, were continued until the twenty-sixth day of October, eighteen hundred and thirty-three, at which time the negro was sold, and purchased by the defendant.

The then sheriff of Mobile county, testified, that he did not put up the said advertisement at the Court house, or any other public place, and gave no other notice of the sale, than the advertisement published as last aforesaid.

Upon this testimony, which was all the evidence in the cause, the plaintiff requested the Court to charge the jury, that unless the sheriff published the commitment of said slave, six months after the appearance of the first advertisement of commitment; and a notice of the sale, for thirty days after the expiration of the six months, as aforesaid, in some newspaper in this State, at the court house of the proper county, and at least two other public places within the same, he conveyed no title to the purchaser.

This charge the Court refused to give, and instructed the jury, that the title to the slave would be good in the purchaser, though the sheriff did not set up the several advertisements, at the different places, unless the jury believed there was fraud, or collusion between the sheriff and the purchaser; and that if the plaintiff was injured by the acts or

misconduct of the sheriff, his remedy was against him.

To which charge, and refusal to charge, the plaintiff excepted.

It was assigned for error here, that the Court erred, as set forth in the bill of exceptions.

*Campbell* for plaintiff in error—*Stewart & Thornton,* contra.

HOPKINS, C. J.—The action in this case was detinue for a slave.

Upon the trial of the issue between the parties, in the Circuit Court of Mobile county, the plaintiff offered evidence, which conduced to prove that he had the right of property in the slave. The defendant claimed the property in the slave, under a sale made by the sheriff of Mobile county. In support of his claim, he proved that the slave was legally committed to the jail of Mobile county, on the thirteenth day of March, eighteen hundred and thirty-three: that the first publication of the commitment was made, by the sheriff, in the Mobile Commercial Register, on the nineteenth of the same month, which he continued to make in the paper, until the fourteenth of September, eighteen hundred and thirty-three, inclusive. On the last mentioned day, the sheriff advertised the slave for sale, at the proper place, on the fourteenth of the next October afterward, and on the twelfth of October, the sale was postponed, by an advertisement of the sheriff, until the twenty-first of the same month. On the last mentioned day, the slave was sold by the she-

riff, and the defendant became the purchaser. It was proved by the sheriff, that he did not put up an advertisement of the sale, at the court house of Mobile county, or at any other public place, and gave no other notice than the advertisement that has been mentioned, which he published in a newspaper.

The plaintiff requested the Court, to instruct the jury, that unless the sheriff published the commitment of the slave, six months after the appearance of the first publication of the commitment, and a notice of the sale, for thirty days after the expiration of the said six months, in some newspaper in the State, at the court house of the proper county, and at least two other public places, within the same; his sale conveyed no title to the purchaser.

These instructions the Court refused to give, and charged the jury, that the title to the slave was in the purchaser, although the sheriff did not set up the several advertisements at the *different* places, unless the jury believed there was fraud and collusion, between the sheriff and purchaser; and that if the plaintiff was injured by the acts or misconduct of the sheriff, his remedy was against the sheriff.

To the opinions of the Court, the plaintiff excepted, and the questions which arise from the assignments of error, are, whether or not the Court erred in refusing or giving the instructions, that have been mentioned.

The only source of authority which the sheriff had to sell the slave, is in the act of eighteen hundred and nine; which authorizes the commitment of any runaway slave to jail, and provides that if

any "such runaway slave shall not be claimed, and proved by the owner thereof, within six months from the first publication of the commitment of such slave, in some newspaper published in this State, it shall be lawful for the sheriff of the proper county, to sell said runaway slave, at public auction, at the court house of his proper county, upon giving at least thirty days previous notice, of such sale, by advertisement, published in some newspaper in this State, at the court house of the proper county, and at least two other public places within the same."* 395.  *Aik. Dig.

The publication of the commitment of a slave, is required for the benefit of his owner. It is a source from which the master, will more probably learn, than from any other, where the fugitive is. It is the duty of Courts to give such a construction to the act, as will carry the intention of it into effect. The act does not prescribe the number of publications, or the time through which the sheriff shall continue to make them; but it does not authorise him to make any preparation to sell, until six months after the first publication. The terms of the act show that the intention of it cannot be executed by one publication. The object of the act in requiring the publication of the commitment, was, to open a source of information for the benefit of the master. As it withholds authority from the sheriff, for six months, to take any measure for a sale, and requires more than one publication, we think the number of the publications intended by the act, is limited by the numbers published of the newspaper, which contains them, from the first publication of the commitment, to the end of the six

5 P.     7

months. But if the publication be continued to the last number of the newspaper, that was published before the expiration of the six months, and be made in that number, it would be sufficient.

It appears from the record, that the last publication of the commitment, was in the newspaper in which it was first made, and had been continued, on the fourteenth of September, a few days only before the six months expired; and it does not appear that any number of the newspaper was published, between that day and the end of the six months. If it had been proved that no number was published afterward, and before the termination of the six months, the publication would have been sufficient. The publication must be proved by the party, whose right depends upon it; and as the defendant did not prove, that it was made in the paper as often as it could have been, within the six months, we are of opinion, there was a failure to prove the publication required by the statute.

The next question is, as to the authority of the sheriff to advertise the sale before the expiration of the six months. If at the end of the six months, the master should claim and prove his property in the slave, there would be no right in the sheriff to sell; and it cannot be the intention of the act, that he shall have authority to advertise a sale, before it is known that one will be necessary. If he had the authority, and should exercise it, the consequence would be, that the master who proved, at the end of the six months, his right to the slave, would be bound to pay the cost of the advertisement. To exempt the master from such charge, and to avoid

the inconsistency of the sheriff's acting, while it is uncertain whether he will ever have a right to sell, as if he had acquired it, the act ought not to be so construed as to give him an authority, which the terms of the act do not confer.

We think, therefore, that the notice of the sale, must be given for thirty days after the expiration of the six months.

This notice must be given by advertisement, published in some newspaper in this State, at the court house of the proper county, and two other public places within the same county, because the act requires it. If we were convinced of the truth of the argument, which was relied upon by the defendant's counsel, that no more persons would have known of the time and place of the sale, if the omitted advertisements had been made, than did know these facts, from the one published in the paper, we could not disregard the part of the act that requires them. The reasoning in a future case, might be as plausible in support of such a sale, made upon advertisements at the proper public places only, upon the ground that the circulation of every newspaper in the State, was so limited in the county, where the sale was made, the publication of an advertisement in any, could not have made the notice more general than it was.

The operation of the act ought to be uniform, and the rule of action which it prescribes, observed in every county.

The case of *Fitch vs Dunlap*,[*] cited for the de- [*2 Ham. R. 78.] fendant, is not opposed to the construction we have given to the act. In that case, an act was constru-

.ed, which required that notice of the sale of land, should be given for at least thirty days, before the sale, by advertisement in some newspaper, printed in the county where the lands were situate; or in case no newspaper be printed within said county, then in some newspaper in general circulation therein, and by putting up an advertisement upon · the court house door, and in five other places in the county.

The Court decided that the effect of the disjunctive " or," which was used in the sentence, was to make two clases of cases, and that where the advertisement was published in a paper, printed in the county in which the land was situate, no advertisement elsewhere, was required; but where there was no newspaper in such county, the advertisements should be put up at the places directed by the act.

The case cited from 3 McCord's Rep. 290, was upon a similar act, which divided the cases, in which it required notice, into two classes, and prescribed a different mode of giving notice in each class.

The sheriff had no general authority, as sheriff, to sell runaway slaves, but a special power conferred by the act. The grant of the power was accompanied by directions, to regulate the exercise of it. If he had executed it properly, the property of the owner of the slave, would have been transferred to the purchaser. The principle applicable to such a case is well settled, "that the person invested with such a power, must pursue the course prescribed by law, or his act is void." Any person

who purchases of him, is charged with knowledge of the extent of his power. Every act the sheriff is required to do, under this act, is, if performed, a constituent part of the title of the purchaser, from him, and evidence of each one of them must be given, in support of a title, set up under a sale, by the sheriff, in such a case.*

*4 Wheat. 77—6 Ib. 119, 125: 9 Ib. 607, 628. Paley on Agency, 150, 151.

The effect of the proviso to the act, upon sales, is confined to sales made according to all the directions of the act. Such sales only, are valid.

We are of opinion, that the Court erred in refusing the instructions for which the plaintiff moved, and in the charge that was given.

The judgment is reversed, and the cause remanded.


GOLDTHWAITE, not sitting.