## Joy *v.* The State.

Joy
v.
The State.

14   139
144   659

14   139
159   397

14   139
168   311
f168   313

Indictment of a father for the murder of his infant child. The wife of the defendant, at the time the alleged crime was committed, was afterwards divorced. Her testimony was received touching the transaction as she witnessed it, without reference to any communication from her husband. After the evidence was all heard, and before the jury retired, the Court instructed the jury to disregard her testimony. The trial lasted three days. It was urged that the instruction of the Court could not remove from the mind of the jury the improper impressions made by the statements of the wife; and that at the end of the trial, it would be impossible for the jury to separate those impressions from those derived from the mass of testimony that had been heard. But *held,* upon ample authority, that there was no error. *Quære,* whether the testimony was competent.

Upon cross-examination, a witness was asked whether, about the month of *August,* at *Wabash,* she had made certain statements to certain persons. *Held,* that time and place were not fixed with sufficient definiteness to lay the foundation for impeaching testimony.

A verdict in a criminal case may be received on *Sunday.* And if, upon its reception, the jury is discharged without objection, the right to poll the jury is waived.

The sheriff is not the proper officer to interrogate talesmen as to whether they have any conscientious scruples against finding a verdict of guilty, where the punishment would be death. But where the record did not show that any person otherwise competent was rejected by the sheriff because of such scruples, nor that he acted from corrupt motives, nor that any injury resulted to the defendant: *Held,* that there was no error.

Indictment in three counts—1. That defendant held the child .in the flames, vapor and steam, issuing from burning brush in the fire-place, until fatal injuries were inflicted. 2. That fatal injuries were inflicted by blows. 3. Alleging both the acts. *Held,* that there was no inconsistency in the counts.

It is settled law in this state, that where a legal indictment has been returned by a competent grand jury to a Court having jurisdiction of the person and the offense, and the defendant has pleaded, and a traverse jury has been duly impanneled and sworn, and all the preliminary requisites of record are ready for the trial,—the prisoner has been once put in jeopardy.

And, in such case, the prosecuting attorney cannot, even with the consent of the Court, enter a *nol. pros.* and indict the defendant again for the same offense.

But when the indictment is so defective in form that if the defendant were found guilty he would be entitled to have any judgment which could be entered thereon against him reversed; or if the judge discover any defect after the trial has commenced which would render a verdict against the prisoner void or voidable; then the judge, upon his own motion, may stop the trial, and what may have transpired will be no bar to future proceedings; and the prosecuting attorney may *nol. pros.* such indictment and procure a new one.

After a plea of not guilty has been entered, and a jury elected and sworn, it is

May Term,
1860.
───────
Joy
v.
The State.

entirely irregular, without a formal withdrawal of such plea, and a discharge of the panel, to entertain a motion to quash the indictment.

The right of a prisoner to be discharged because he has been once put in jeopardy, extends only to instances where that peril was really impending over him, "from the verdict that might be returned by the jury upon the matter in reference to which they might lawfully return such verdict."

The Court is not authorized to compel an election where several counts of an indictment are for the same offense, stating it in different forms.

And where such election is ordered, it will be presumed that the indictment charged distinct offenses.

And when such election is made, no jeopardy can be incurred under counts not relied upon; but a *nol. pros.* may be entered, as to such counts, and a new indictment found.

And further, where the defendant is charged in two counts, properly joined, but upon his own motion he procure an order for such election, which operates to withdraw one of the counts from the jury as fully as if it had charged a distinct offense, so that to that count no evidence can be directed if the trial progresses,—he waives any constitutional right that may have apparently attached, as to that count, just as he would have waived it if he had consented to a discharge of the jury, or, after verdict, moved for a new trial or in arrest.

Tuesday,
May 29.

APPEAL from the *Wabash* Circuit Court.

Hanna, J.—*Joy* was indicted, at the *March* term, 1859, of the *Wabash* Circuit Court, for the murder of his infant child; tried, and convicted of manslaughter, and sentenced to the state prison for eighteen years. He appeals to this Court, and assigns twenty-one errors, which we will dispose of, although we will not notice them in the order in which they are pleaded.

It is urged, in various forms, that error occurred on the trial in the rulings of the Court in reference to evidence. *Maria Joy* was the wife of the defendant at the time of the alleged commission of the crime, but had been divorced from him before the trial. Her testimony was received as to the transaction, as she witnessed it, without reference to any communication that may have passed between her and her husband. Before the jury retired, they were instructed to disregard her testimony; and, in the language of the bill of exceptions, it was "stricken out by the Court." The trial lasted some three days, and it is argued here that the instructions of the Court could not remove from the minds of the jury the improper impres-

sions which might have been made by the statements of Mrs. *Joy;* that at the end of the time indicated, it would be impossible for the jury to separate the impressions derived from her testimony, from those derived from the great mass of evidence that had been heard; and, therefore, the subsequent action of the Court could not repair the wrong inflicted by the previous error.   There is much ·force in this argument, especially in the case at bar, the record in which discloses the fact that the attention of the defense was directed to an effort to impeach, or rather discredit, Mrs. *Joy.*   After the evidence was all heard, and the argument about to commence, the Court took the action above stated as to her testimony.   If this question were not settled by ample authority, we might hesitate long before sustaining the decision below, under these circumstances.   We do not decide whether her testimony was competent; that question is not made before us.

The defendant, upon cross-examination of *Nancy Joy*, his daughter, asked her whether, about the month of *August*, 1858, at *Wabash*, she had made certain named statements to *Peter Joy* and *Anna Joy.*   Upon objection made, the Court refused to permit the witness to answer the question.   Afterwards, upon objection made, the Court refused to receive the testimony of the impeaching witnesses, upon the point made in the question, for the reason that the foundation for its introduction had not been sufficiently laid.   In this, we think, there was no error. The object in requiring the attention of the witness to be called to the time, place, and person, &c., to whom statements were made, is to refresh the memory as to the particular conversation in which the supposed contradiction or statement occurred.   The defendant should have been prepared to more definitely fix the time and designate the precise place where the conversation took place as alleged.

On the last *Saturday* night of the regular term of the Court, the case being on trial, the jury, a short time before twelve o'clock, returned a verdict; the counsel for the state and the prisoner were present.   There was a delay, until twenty-five minutes past twelve, to await the arrival;

May Term,
1830.

Joy
v.
The State.

in the court-house, of the counsel for the defendant. The verdict was then received. The counsel for the defendant stating that he would make no motion then, as *Sunday* was not a judicial day. The jury was thereupon "discharged without objection;" and the Court adjourned until *Monday*. Upon the meeting of the Court on *Monday* morning, the defendant demanded the right to poll the jury, which was refused, because they had been permitted to separate and were not present in Court.

It is now insisted that the Court erred in receiving the verdict on *Sunday*, and in refusing permission to poll the the jury. These points are zealously urged. It has been decided by this Court, in civil cases, that a verdict could be received on *Sunday*. *Rosser* v. *Mc Colly*, 9 Ind. R. 588. — *Cory* v. *Silcox*, 5 *id*. 373. We know of no reason why the same rule should not apply in criminal cases. The defendant had the right to poll the jury, at the time of the return of the verdict. This was, in effect, decided in the case above cited from 9 Ind. If he failed to exercise that right, and the jury were permitted to separate without objection, the time to avail himself of that privilege was then passed, and he should not have been permitted, at any future day, although the jury might have been present in the court-house, to then attempt its exercise. The reason for this is obvious. It would be useless to exercise care in guarding the jury from extraneous influences, during the trial of a cause, if the right to poll the jury can be made available after the jury has returned a verdict, been permitted to separate, and ascertain the views of the community upon the subject. Polling the jury is but a mode of obtaining the sense, in open Court, of each individual juror in relation to the correctness of the verdict returned. That view must be governed by the law and the evidence, and must not depend upon the influences that might be brought to bear after a separation.

The sheriff, in summoning talesmen, asked several of the jurymen whether they had any conscientious scruples against finding a verdict of guilty, where the punishment would be the death penalty. This is but putting the ques-

tion in a somewhat similar form to that authorized to be put at the examination of the juror as to his competency. But the sheriff is not the proper officer to put such question, nor decide upon the answers. It is true, he is commanded by the Court to summon competent jurors from the bystanders; but if neither the state nor the defendant sought to ascertain the views of the person presented upon that point, he would, if otherwise competent, be a good juror without reference to his opinion upon that subject. At least, if there were persons accepted upon the panel without examination, possessed of such conscientious scruples, it would, if an error at all, be one in favor of the defendant, and of which he could not complain; and the state could not again prosecute in case of acquittal under such circumstances. But however reprehensible the conduct of the sheriff was upon that subject, there is nothing in the record showing that any person, otherwise competent as a juror, was rejected by him for that reason; nor is it shown that he acted from corrupt motives, or that any injury resulted to the defendant. There was, therefore, no error, in that respect, of which the defendant can avail himself.

There were three counts in the indictment—

*First.* Averring that defendant held the child in the flames, vapor and steam, arising from burning brush, &c., in the fire-place, until fatal injuries were inflicted.

*Second.* Averring that fatal injuries were inflicted by blows.

*Third.* Alleging both acts.

The defendant moved that the state be compelled to elect upon which count he should be placed upon trial. The motion was overruled.

It is urged that the means set forth by which the fatal result was alleged to have been produced, are "different and inconsistent," and, therefore, ought not to have been included in the same indictment; or if so included, that the defendant ought not to have been placed upon his trial as to but one of said charges. No authority is referred to by connsel for the appellant.

It seems to us that it is but a different form of charging the same offense. *The Commonwealth* v. *Mason*, 2 Ashm. 31.— *The State* v. *Hogan*, R. M. Charlt. 474.— *Hayne* v. *The People*, 8 Wend. 203.— *The State* v. *Coleman*, 5 Port. 52. The whole indictment shows that the offense with which the grand jury were charging the defendant, was the murder of his child, *John Joy*. Different means are averred to have been used to accomplish the crime, for the purpose of meeting the proof that might be made. Whart. Cr. Law, § 424.—20 Maine R. 324.—8 C. & P. 727. The evidence given on the trial, if true, showed the use of both means described.

It is urged that the Court erred in refusing a new trial. The evidence is in the record, and the sufficiency of it is involved in this and other reasons assigned.

We have carefully examined the evidence. It presents much conflict in regard to the health of the child previous to the imputed crime, and also in reference to some other matters incident to the main fact; but upon the main facts in the case, namely, that the defendant stripped the clothes from his child, from four to six months old, and taking it by one arm and one leg, held it over a blazing fire, or rather in the blaze, vapor and steam, produced by burning brush, placed upon the hearth to kindle a fire early in the morning, and afterwards struck it several severe blows. There is the uncontradicted evidence of his daughter, aged eighteen years; that is, her testimony is uncontradicted by the evidence of other witnesses upon this point, however far the brutality and fiendish barbarity of the act itself may tend to contradict or weaken the truth of her statements, or the possibility that a father would commit so inhuman an act. But there was, in addition to her evidence, that of one other witness, to the effect that the defendant admitted that he held the child over the fire, but that he did so because it was sick, and for the purpose of curing it, and that he did not burn it. There was also the evidence of medical witnesses to the effect that the description of the sores on the child, and the sloughing after death, showed, in their opinion, that

they had been produced by burning.  However long we
might have hesitated as jurors to accept as true the evi-
dence of the witness as to the commission of so unnatu-
ral a crime, yet the jury, in this case, having weighed the
testimony, and passed upon it, we are not prepared to say
that their finding is not supported by the evidence.

The main question in the case remains to be examined.
It is presented in different forms, and arises upon the fol-
lowing facts, namely:  The defendant was indicted for
the same offense at the *August* term, 1858.  At the *March*
term, 1859, he pleaded not guilty to the indictment, which
contained two counts similar in substance to the first two
counts of this indictment.  A jury was, thereupon, impan-
neled and sworn.  After the jury was so sworn, the Court,
without the plea of not guilty having been withdrawn,
permitted the defendant to make motions—

*First.* To compel the prosecuting attorney to elect upon
which count he would try the defendant.  The motion was
sustained, and the prosecutor required to elect.  He chose
to go to trial upon the first count.

*Second.* The defendant moved to quash that count.
The Court entertained and sustained the motion.  The
prosecutor then asked leave to *nol. pros.* the second count,
and moved that the prisoner be remanded to jail to await
the further action of the grand jury.  Permission was
granted to enter a *nolle prosequi* as to the second count,
which was done, and the defendant remanded to jail, and
discharged from that indictment.

The indictment upon which he was afterwards, at the
same term, tried and convicted, was then returned by the
grand jury.  The defendant, upon being arraigned, plead-
ed the former acquittal upon a similar charge for the same
offense.  The state replied the facts hereinbefore stated,
and that the prosecutor, upon electing to try upon the first
count, "dismissed the second count of said indictment."
The defendant demurred to the reply, which demurrer was
overruled.  The record of the former indictment, and the
proceedings thereon, were embodied in the plea, and also
given in evidence to the jury on the trial.

Vol. XIV.—10

It is insisted that he had been once placed in jeopardy, and could not be again put upon trial, for the same offense.

It appears to be settled by a current of decisions in this country, that where a legal indictment has been returned by a competent grand jury, to a Court having jurisdiction of the person and of the offense, and the defendant has pleaded to such indictment, a traverse jury been duly impanneled and sworn, and all the preliminary prerequisites of record. are ready for the trial, the prisoner is then considered to be so far in jeopardy as to preclude any attempt to again place him upon trial for the same offense. Therefore, the prosecuting attorney would not, even with the consent of the Court, be authorized to enter a *nolle prosequi*, and again indict the defendant for the offense. In other words, if the defendant has been thus once legally placed upon his trial, he is entitled to a verdict; or if the jury is improperly discharged, without returning a verdict, the legal effect is an acquittal, except upon the intervention of certain unforeseen occurrences, which it is not necessary to further notice here, as the facts in the case at bar do not bring it within the rules applicable thereto. *The State* v. *Davis*, 4 Blackf. 345.— *The State* v. *Kreps*, 8 Ala. R. 951.— *The State* v. *Thornton*, 13 Ired. 256.— *The State* v. *McKee*, 1 Baily, 651.— *The Commonwealth* v. *Wheeler*, 2 Mass. R. 172.— *Clarke* v. *The State*, 23 Mo. R. 261.— 1 Bish. on Cr. Law, 659, 661.— *Weinzorpflin* v. *The State*, 7 Blackf. 191.— *Wright* v. *The State*, 5 Ind. R. 292. It is also true, that as respectable an array of authorities and adjudications might be cited to the effect that the jeopardy does not fully attach until the return of the verdict. But this Court has heretofore accorded in its decisions with the proposition first above laid down.

But it has been often decided that all the necessary preliminary things of record do not exist, so as to place the prisoner in jeopardy, when the indictment is so defective in form, that, supposing the defendant found guilty, by the jury, he would be entitled to have any judgment which could be thereon entered up against him reversed. Therefore, whenever, after a trial has commenced, the

judge discovers any imperfection which will render a verdict against the prisoner void or voidable, upon his motion, he may stop the trial, and what has transpired will be no bar to future proceedings; consequently, a prosecuting attorney, under our practice, which requires the consent of the judge to the act, might enter a *nolle prosequi* to such an indictment, and procure a new one. 2 Hale's P. C. 248.— *The People* v. *Barrett,* 1 Johns. 66.— *The Commonwealth* v. *Loud,* 3 Met. 328.—Same v. *Keith,* 8 *id.* 531. — *The State* v. *Williams,* 5 Md. R. 82.—*Pritchet* v. *The State,* 2 Sneed, 285.— *The Commonwealth* v. *Chichester,* 1 Va. Cas., 312.— *Cochrane* v. *The State,* 6 Md. R. 400, 406.— *Walton* v. *The State,* 3 Sneed, 687.

A late writer upon criminal law, and one who enters fully into the discussion of the question now under consideration, uses the following language:

" The prohibition of a second jeopardy implies, in the first place, that there has been such a jeopardy already as the machinery of government, in its ordinary workings, is able to bring upon a person committing crime. * * * The bringing of the defendant into Court by arrest, is what we have termed the obtaining, by the governmental power, of the control of his person. The finding of the indictment, the impanneling of the jury, and the completion of the case in all other respects for trial, are the laying hold, by the governmental power, of the machinery. But if the machinery is in any respect imperfect, whether the imperfection is apparent or not—imperfect to the extent, that what it does is liable to be undone on application of the defendant, after his conviction—then the question is the same as if the power had not put its hand at all on the machinery." 1 Bish. on Cr. Law, 671.

Again, it has been often held that a prisoner may, by his own consent, waive many things falling under the constitutional right now being considered; among others, where a verdict has been rendered on an indictment good or bad, if the defendant should move in arrest of judgment, he will be presumed to waive any objection to being put a second time in jeopardy, and may ordinarily be tried

anew. *Id.* 674.—*Rex* v. *Reed,* 1 Eng. L. and E. 595.— *Monroe* v. *The State,* 5 Geo. R. 85.—*Sutcliffe* v. *The State,* 18 Ohio R. 469.—*Sellers* v. *The State,* 1 Gil. 183.—*Hines* v. *The State,* 8 Humph. 597.—*Allen* v. *The Commonwealth,* 2 Leigh, 727.—*The State* v. *Hughes,* 2 Ala. R. 102.—*The State* v. *Battle,* 7 *id.* 259.—*The State* v. *Phil,* 1 Stew. 31. —*The People* v. *McKay,* 18 Johns. 212.—*Wright* v. *The The State,* 5 Ind. R. 530.—*The State* v. *Mead,* 4 Blackf. 309.—*Andrews* v. *The State,* 2 Sneed, 550.

When the indictment is good, and the Court, laboring under the belief that it is not good, shall, on the defendant's application, arrest judgment on a verdict of conviction, the defendant's jeopardy has ceased, at his own request, and for his own benefit, and he may be proceeded against anew, where the prosecutor is not authorized to obtain a reversal of the judgment of arrest so as to again proceed on the former indictment. *Id.* 674.—*The State* v. *Norvell,* 2 Yerg. 24.—*The People* v. *Casborus,* 13 Johns. 351.—*Gerard* v. *The People,* 3 Scam. 362.

Apply these principles to the facts existing in the case at bar, and it is apparent at once that, as to the count of the first indictment which was, on the defendant's motion, quashed, he could not successfully rely upon the proceedings thereon as a bar to a second prosecution. Certainly the sustaining the motion to quash, whether rightfully or not, could not place him in a worse condition than if he had been tried on the same, and, after a verdict of guilty thereon, the judgment had been arrested on his motion. *Pritchett* v. *The State,* 2 Sneed, 290.

As to the effect of the proceedings on the second count in the first indictment, which is valid, still more difficulty is presented, in consequence of the strange and unusual course pursued in the proceedings, in attempting to place the defendant upon trial on that first indictment.

After the plea of not guilty had been entered, the jury elected and sworn, it was entirely irregular, without a formal withdrawal of such plea, and a setting aside of the impanneling, &c., of the jury, to entertain the motion to quash the indictment. If the course indicated, and which

appears to us, in view of the authorities above referred to, the proper one, had been pursued, the motion of the defendant to set aside the jury and to withdraw his plea, would have made a record showing, affirmatively, that he had waived any rights which were, by the constitution, secured to him from such acts having taken place. But as the Court permitted this irregular proceeding, the question is, what was the effect?

We conceive it to be a correct proposition, that the most liberal view that can be taken in favor of the constitutional right of a prisoner to be discharged because he has been once placed in jeopardy, only extends to instances where that peril was really impending over him from the verdict that might be returned by the jury, upon the matter in reference to which they might lawfully return such verdict.

The Court, trying the case, is not authorized to compel an election, in an instance where the several counts of the indictment are for the same offense, and merely state the charge in different forms. We should presume that the ruling of the Court in compelling the election, was based upon this legal principle, and was correct. In other words, that there were separate charges in the indictment, of distinct offenses.

It is true, that the election was not made until after the jury were sworn; and, apparently, they were sworn to try all the charges in the indictment. But in point of fact, by the act of the defendant in making the motion to compel the election, only one of the offenses as charged was reserved for the consideration of the jury. If the trial had progressed to a verdict—that is, to the return of a verdict—but the one charge could have been investigated by that jury. The defendant would have been in no peril in regard to any verdict then to be returned as to the offense charged in the second count, for none could be returned in reference thereto. Certainly no peril existed from the time election had taken place, as to the second count. That election was the consequence of his own motion, and was one of the "preliminary things of record" which

was legitimately interposed by him to rid himself of the jeopardy which would otherwise attach as to a part of the charges embodied in the indictment. By failing to make the motion, he could have taken the risk of the jeopardy resulting from a trial upon the whole indictment. Before the prosecuting attorney had stated the case to the jury, which, under our practice, is, in effect, giving the defendant and the case in charge to the jury (2 R. S. p. 374, § 103), the defendant made a motion which was equivalent to saying, "I protest against being given in charge to this jury for trial upon all the offenses embodied in this indictment. I insist upon being tried on one charge only, and that all the other charges in the indictment be withdrawn from the consideration of the jury."

It is true, that, as the election rested with the state as to which charge the prisoner should be tried upon, it was, until that election was made, uncertain as to which he would be placed in jeopardy; but until that election was made, all the "preliminary things of record," which might rightfully intervene, were not ready for the trial; and the jeopardy, therefore, really never attached, in the proper sense of the constitution, to the defendant, in respect to any of the charges in the indictment but the one on which, in consequence of his own motion, he was ultimately placed upon trial.

The Supreme and some of the Circuit Courts of the *United States*, as well as the highest judicial tribunals of several of the states, have held that the jeopardy meant by these constitutional provisions, has not attached, in a legal sense, until a verdict has been returned. Most surely, whilst we are giving to a similar provision of a constitution a construction so much more liberal, in favor of a person charged with crime, we ought not, unless the subject was free from doubt, in view of these high authorities, to draw such finespun theories in favor of the liberty of the citizen, and his constitutional rights, as to decide that, legally, a prisoner had been placed in jeopardy, when, in point of fact, he had not been in a position where evidence, which might lawfully have gone to the jury on the

former trial, could have imperiled a conviction for the same offense now being investigated.

To illustrate: Suppose, in a given case, two offenses had been committed—one on the first of *November*, an assault and battery upon *A. B.*, with intent to murder by *C. D.* Afterwards, on the first of *February* following, *C. D.* should actually murder *A. B.* And suppose, further, that *C. D.* should be charged with both of the offenses in the same indictment, but in different counts, correctly as to dates, but charging in each that death ensued. On the face of the indictment it would appear to be good. And suppose, further, that, after the jury should be impanneled and sworn, the prosecutor, before swearing any witnesses, or stating his case to the jury, upon the fact being shown to the Court that he was attempting to try the defendant for both offenses, should be compelled by the Court, on the motion of the defendant, to elect upon which charge he would try, and the prosecutor, under the belief, whether properly or improperly entertained it is not necessary to decide, that a conviction might be had for an assault and battery with an intent to murder under a count for murder, by virtue of the 2 R. S. p. 370, § 72, should thereupon elect to try upon the count charging the offense committed in *November*, and should enter a *nol. pros.* as to the other count; and upon the trial of the defendant for the offense of *November*, he should be acquitted for any reason, is it true that the acquittal thus obtained of the offense charged to have been perpetrated in *November*, is a bar, under these circumstances, to a further prosecution for the more heinous offense of *February*, in reference to which no evidence was heard, no verdict rendered—in a word, an offense which was not for a moment considered by the jury? We cannot see that the jeopardy ever attached, as to that offense, so as to bar another prosecution.

The impanneling and swearing the jury would be subject to the legal right of the defendant to insist that the state should elect upon which charge a trial should be then had. Upon the happening of this event, a legal necessity would then exist for the withdrawal of a part of

the charges from the consideration of the jury—a stopping of the trial as to such part—and consequently no jeopardy would have, as to that part, attached, although it had, for a time, apparently so attached.

Thus far we have been considering this question under the assumption that two distinct offenses were charged in the first indictment, and the ruling of the Court in compelling an election, proper. In point of fact, such was not the case. In that indictment the same offense was charged in different forms, and the second count was, upon its face, a good count.

We have already seen that if a defendant moves in arrest, or to vacate a judgment already rendered, he will be presumed to waive any objection to being put a second time in jeopardy; and if he succeeds in causing judgment to be arrested on a verdict rendered on a good indictment, the Court supposing it to be bad, he may be again placed on trial. The reason of this is that the proceedings were had at his instance, which resulted in setting aside the verdict, &c. It was for his benefit, and he is presumed to waive any future peril he may incur, in view of the advantage he derives by getting rid of the present pressing jeopardy. So in the case at bar, the defendant was charged in two counts with having produced the death of a human being—first, by fire; second, by blows. The counts were properly joined; but by his own motion, and therefore certainly with his consent, he procured an order of the Court which operated to withdraw the second count from the consideration of the jury as fully as if it had charged a separate offense. To that count no evidence could have been directed, if the trial had progressed. By that act, it appears to us, for these reasons, and those heretofore advanced, he consented to waive any constitutional rights which might have apparently attached, just as he would have waived those rights if he had consented to the discharge of the jury, or after verdict moved for a new trial or in arrest. *Elijah* v. *The State*, 1 Humph. 102.—*Williams* v. *The Commonwealth*, 2 Grat. 567.—*Dye* v. *The Commonwealth*, 7 *id.* 662.—*The State* v. *McKee*, 1 Baily, 651.—

*Spencer* v. *The State,* 15 Geo. R. 562.—7 Blackf. 186.—7 N. Hamp. R. 287.—6 Alb. 676.—2 Leigh, 727.—17 Mass. R. 515.—1 McLean, 429.—3 *id.* 573.—5 *id.* 286.—8 Wend. 549, and authorities heretofore cited.

May Term, 1860.

*Per Curiam.*—The judgment is affirmed.

