Halloran v. The State.

---

No. 9973.

## HALLORAN v. THE STATE.

CRIMINAL LAW.—*Former Conviction.*—*Assault and Battery.*—*Judgment Fraudulently Procured no Bar to Prosecution.*—A judgment of conviction of assault and battery, fraudulently procured by a defendant, before a justice of the peace, in the absence of the injured party, is no bar to a real prosecution for the same offence. Such judgment is a mere nullity.

SAME.—*Jeopardy.*— *When it Attaches.*—Jeopardy does not attach until the first step in the trial is taken.

SAME.— *When no Bar.*—A defendant can not shelter himself behind the jeopardy into which he thrust himself in defiance of law and in opposition to the desire of the officers of the State.

SAME.—*Trial in Absence of Injured Party.*—*Fraudulent Judgment of Conviction.*—Where a justice of the peace, in a prosecution instituted before him by the defendant for assault and battery, over the objection of the officers of the State and their motion to dismiss, and in the absence of the injured party, because too badly injured to attend, renders a judgment of conviction, it is fraudulent, and not a bar to a real prosecution.

From the Jasper Circuit Court.

*S. P. Thompson* and *D. J. Thompson,* for appellant.

*D. P. Baldwin,* Attorney General, *W. W. Thornton, D. L. Bishopp,* Prosecuting Attorney, and *F. W. Babcock,* for the State.

ELLIOTT, C. J.—Appellant was convicted of an assault and battery upon the person of Edward O'Connor.

In a very able and elaborate brief, counsel for appellant argue that he was entitled to an acquittal upon the ground of self-defence. We can not reverse for this reason. There is evidence abundantly sustaining the finding of the trial court upon this point.

The second proposition advanced by appellant is, that he was entitled to an acquittal because the evidence shows a former conviction for the same offence as that charged in the present information. The counsel for the State, with much earnestness, combat this proposition. In order to properly understand the question in dispute between the parties, it is necessary to give a brief synopsis of the evidence. Elza Phillips was the appellant's attorney, and at his request one John F. Boroughs filed an affidavit before a justice of a peace, charging appellant with the assault and battery upon O'Connor; a warrant was issued, and the appellant arrested; a subpœna was issued for and served upon the injured person; on the day appointed for the trial, two attorneys, one a deputy prosecutor, appeared for the State; the appellant appeared and secured a postponement; at the time fixed by the court, Phillips filed a statement of O'Connor, asking that the appellant should not be prosecuted; an affidavit of O'Connor was filed by the attorney representing the State; the justice's record

Halloran v. The State.

recites, " that the court overruled it as a counter affidavit, and the attorneys for the State then withdrew from the case and court; the court, after hearing the evidence, and being fully advised in the premises, ordered and adjudged that the defendant be fined the sum of five dollars and the costs of this suit."

The affidavit tendered by the State showed that O'Connor did not desire the prosecution dismissed—did not knowingly make any statement to that effect; that if any such statement existed, it was procured by fraud; that he was so seriously injured as to be unable to appear. It was also shown that the State asked a continuance; that the prosecutor offered to show by Dr. Bitters, that O'Connor was unable to be present; that he called attention to the law prohibiting a justice from trying a case in the absence of the injured party; that, after the continuance had been refused, the prosecutor asked leave to dismiss the case; that, after leave was refused, counsel for the State withdrew, and the trial proceeded in their absence. There is evidence showing that O'Connor was unable to leave his bed, that appellant and the justice knew this; and there is also evidence tending strongly to show that the statement alleged to have been made by O'Connor was procured by the fraudulent act of appellant's attorney, Elza Phillips.

If the appellant was in jeopardy, on the charge preferred by his own attorney, before the justice of the peace, he voluntarily, and against the earnest opposition of the State, placed himself in that position. The State had made known to the justice the fact of the injured man's inability to appear; had brought to his attention the imperative provision of the statute upon the subject, and had demanded of him obedience to this law. Can the appellant shelter himself behind the jeopardy into which he thrust himself in defiance of law, in opposition to the known desire of the State, and for the evident purpose of escaping adequate punishment for a brutal assault? The fraudulent purpose and the corrupt means to secure a conviction and a light punishment, in the absence of the injured person, are very apparent.

In nearly all of the States the officer prosecuting the pleas of the State has a right to enter a *nolle prosequi*, at any time before the accused is actually in jeopardy, without leave of the court. This is the rule declared in almost all of the American courts, and was unquestionably the common-law rule. 1 Bish. Crim. Law, 1014; 1 Bishop Crim. Procedure, section 278; Archbold's Crim. Law, 316. Our statute, however, changes this rule; it requires that leave of the court be obtained. 2 R. S. 1876, p. 399; R. S. 1881, section 1673. Where jeopardy has been actually incurred, there can be no dismissal at all; a *nolle prosequi*, in such a case, is, in effect, an acquittal of the accused. *Joy* v. *The State*, 14 Ind. 139.

In the case before the justice this appellant had not been in jeopardy at the time the prosecutor asked leave to dismiss, for jeopardy does not attach until the first step in the trial is taken. 1 Bishop Crim. Law, section 1014; *Joy* v. *State, supra*.

The evidence in this case fairly establishes these important propositions:

First. The prosecution was set on foot by the agency of the accused himself, for the fraudulent purpose of evading adequate punishment.

Second. The injured person was so disabled by the act of the appellant as to be unable to appear at the trial, and this was known to the latter, and to the justice of the peace.

Third. The appellant thrust himself into jeopardy over the earnest opposition of the State, and after the State had asked leave to dismiss the prosecution.

Fourth. The refusal of leave to dismiss was brought about by the fraudulent practices of the accused.

The question which must control our decision is, Can an accused shelter himself behind a judgment obtained under such circumstances?

The case at bar is a much stronger one than that of *Watkins* v. *The State*, 68 Ind. 427, where the question received careful consideration, and the following rule, laid down by Bishop, is declared to be good law: "But sometimes a man,

Halloran v. The State.

conscious of guilt, procures proceedings against himself, and suffers a slight punishment, thinking thereby to bar a prosecution carried on in good faith. In such a case, if the first proceeding is really managed by himself, either directly or through the agency of another, he is, while thus holding his fate in his own hand, in no jeopardy; the plaintiff State is no party in fact, but only such in name; the judge is imposed upon indeed, yet in point of law adjudicates nothing; 'all is a mere puppet-show, and every wire moved by the defendant himself.' The judgment therefore is a nullity, and is no bar to a real prosecution." We are satisfied that this case should be adhered to; the salutary rule of *stare decisis* so requires, and the principle declared is a sound one, and, as the cases cited by Howk, C. J., show, fully sustained by authority. The true ground upon which such a proceeding is held not to be a bar is that stated by Bishop; it is a mere nullity. If the whole case is controlled and managed by the accused, there are no adverse parties, and where this is so there can not, in the true sense of the term, be a former conviction or acquittal. If the proceeding is absolutely void, then it may be attacked in any manner; the State is not required to make a direct attack. Indeed, under our law, the State can make no direct attack. If the proceedings were simply erroneous, then, of course, no collateral attack would be availing. There are other authorities sustaining the doctrine of *Watkins* v. *The State.* Wharton says: "A former conviction or acquittal procured by the fraud of the defendant is no bar to a subsequent prosecution." 1 Whart. Crim. Law, section 546. The American editor of Archbold's Crim. Pr. & Pl. 352, says: " Where fraud is resorted to, to procure a conviction, it renders a plea of such conviction, on a trial under a subsequent indictment for the same offence, invalid." The strongest case upon this subject which we have seen is that of *The State* v. *Green,* 16 Iowa, 239, where it was said of a judgment procured by the fraud of the accused: " In this state of the case, the State had its election, to appeal, or to treat the action of the magistrate as a farce, and his

judgment as a nullity." We do not mean to approve the broad doctrine stated; we cite the case as strikingly illustrative of the general rule.

The act of February 7th, 1855, was in force when the trial before the justice took place, and it, in most imperative terms, directs the justice not to proceed in such cases as the present, " unless the injured party * * having been subpœnaed refuses to attend." 2 R. S. 1876, p. 668. This statute exerts an important influence upon the case, for it notified court and parties that there could be no legal proceedings in the absence of the injured person. In open defiance of this law, directly brought to the attention of the magistrate, the accused was allowed to press the case to trial in the absence of the person whom he had beaten, and in the absence of the attorneys for the State, who had in vain attempted to dismiss the prosecution for the purpose of securing, what the law so explicitly requires, the presence of the person upon whom the wrong was inflicted. The purpose to evade this law is very evident.

Judgment affirmed.

Woods, J., dissents.