# Richmond.

## BRIGGS v. THE COMMONWEALTH.

### NOVEMBER 18th, 1886.

1. CRIMINAL PROCEEDINGS—*Constitution—Jeopardy.*—So much of section 25, chapter 17, Acts 1877-8, as declares that "if a verdict be set aside on the motion of the accused, and a new trial awarded, on such new trial the accused shall be tried, and such verdict may be found and sentence pronounced as if a former verdict had not been found," is not unconstitutional. *Stuart* v. *Com'th,* 28 Gratt. 950.

2. IDEM—*Autrefois acquit.*—On indictment for murder, at first trial accused is convicted of murder in second degree, and gets verdict set aside. At second trial, he pleads that he has been before acquitted of murder in first degree by virtue of his conviction of murder in second degree ; and moves that the jury be instructed to exclude a finding of murder in first degree. It is not error to reject the plea, nor to deny the instruction.

3. IDEM—*Evidence—Res gestæ.*—On trial of indictment for murder, it is admissible to prove that when the deceased was killed, two persons ran rapidly away in the same direction, and that one said in a jerky voice to the other as they both ran past a by-stander : "Will, you have killed him."

4. IDEM—*Evidence.*—Evidence, not to render witness incompetent for infamy, nor to impeach his veracity, but to prove that he was "given to rows and to putting them off on others," is inadmissible.

5. IDEM—*Instructions—Character.*—It is not error to refuse to instruct the jury that "if accused be proved of good character as a man of peace, the law says that such good character may be sufficient to create a reasonable doubt of his guilt, although no such doubt would have existed but for such good character" ; and in lieu thereof, to instruct them that "the character of the accused, good or bad, when proved, may always be received and weighed by them in favor of or against him, as the case may be."

6. IDEM—*Illegal arrest—Homicide—Case at bar.*—Under circumstances giving a constable, without warrant, or badge, no authority to make the arrest, but giving accused right to resist the arrest, deceased told accused he would arrest him, and against his protest, did arrest him. But accused jerked loose, and then retreating a short distance, turned and fired at the back of deceased, who was unarmed, and ran. The verdict was murder in second degree. On error—

HELD:

The grade of the offence, whether murder or manslaughter only, depending on whether the homicide was committed through actual malice, or through sudden passion, which could be ascertained only from the circumstances, and the jury, with all those circumstances before them, having found that the offence was murder, their finding should not be disturbed, as it was neither against, nor without evidence.

Error to vacation order of judge of circuit court of Culpeper county, denying a writ of error and *supersedeas* to judgment of county court of said county, rendered 22d February, 1886, on an indictment against Wm. Briggs for the murder of M. B. Nalls, whom the jury had found guilty, and whose imprisonment in the penitentiary they had fixed at eighteen years.

Opinion states the case.

*Davis & Harman*, for the plaintiff in error.

*Attorney-General R. A. Ayers*, for the Commonwealth.

LACY, J., delivered the opinion of the court.

The plaintiff in error was convicted of murder in the second degree in the county court of Culpeper at the February term of the said court, 1886, and applied for a writ of error to the circuit court of said county, which was refused. Whereupon, the case was brought to this court upon a writ of error. The homicide was committed September, 1885, and a trial was had in the county court of the case, in which the accused was con-

victed of murder in the second degree.   Upon appeal to the circuit court, the conviction at the September term, 1885, was set aside and a new trial awarded.

At the trial, at the February term, 1886, the plaintiff in error pleaded that he had been before acquitted of the charge of murder in the first degree, by virtue of the former conviction of murder in the second degree, and this plea being rejected by the court, moved the court to instruct the jury, or so modify the charge to the jury, as to exclude a finding of murder in the first degree; which motion the court overruled; and this ruling of the court rejecting the plea and refusing to modify the charge to the jury so as to exclude a conviction for murder in the first degree, constitutes the first assignment of error.

Mr. Blackstone says that the plea of "*autrefois acquit*," or a former acquittal, is grounded on this universal maxim of the common law of England, that no man is to be brought into jeopardy of his life more than once for the same offence.   And hence it is allowed as a consequence, that when a man is once fairly found not guilty upon any indictment, or other prosecution, before any court having competent jurisdiction of the offence, he may plead such acquittal in bar of any subsequent accusation for the same crime.   4 Bla. 335.

But the plea in this case is not that the accused was acquitted of the murder charged in the indictment, but convicted of murder which the jury ascertained to be murder in the second degree—that is, convicted of part of the offence charged, and that such conviction of a part of the offence operated as an acquittal of the other part, or murder in the first degree.   It was a rule of the common law that while more than one offence, even though of the same grade, could not be included in the same count of an indictment, yet it was necessary to set out all the facts constituting an offence in an indictment for it, and as these facts often in themselves are separate offences,

a party might be convicted of any offence substantially charged in the indictment, provided it was of the same grade with the principal or total offence charged. So that if a party were indicted for one felony, as, for example, murder, he might be found not guilty of the murder, but guilty of the crime of manslaughter, which is embraced in the charge. At the common law, a count for a misdemeanor could not be joined in the same indictment with a count for felony, nor could a party indicted for a felony be convicted on that indictment of a misdemeanor.

The common law of England was brought to Virginia by our ancestors, upon the settlement of the State. The Colony of Virginia was first settled by emigrants from Great Britain, who brought with them such laws as were necessary to settle the rights of property, to restrain the lawless, and to protect the weak; and in 1661, the laws of England were expressly recognized by an act of the Colonial legislature, and after all connection had been severed between this and the mother country in May, 1776, it was declared by our legislature that "the common law of England and all statutes or acts of Parliament made in aid thereof, prior to the fourth year of James I., which are of a general nature not local to that kingdom, together with the several acts of the colony then in force, so far as the same may consist, with the several ordinances, declarations and resolutions of the general convention, shall be considered as in full force until the same shall be altered by the *legislative power of the Commonwealth.*" 1 R. C. ch. 38.

The common law has been changed by statute in this State upon this subject. It was provided by the Legislature by the acts of 1844–5, as is now found in the 25th section of the 17th chapter of our Criminal Code: "If any person indicted of felony be, by the jury, acquitted of part, and convicted of part, of the offence charged, he shall be sentenced for such part as

he is so convicted of, if the same be substantially charged in the indictment, whether it *be felony or misdemeanor.*" And by the act of 1847–8, as is provided in the 29th section of the Criminal Code, chapter 17 (Acts 1877–8, p. 345), "on .an indictment for felony, the jury may find the accused not guilty of the felony, but guilty of an attempt to commit such felony; and a general verdict of not guilty upon such indictment shall be a bar to subsequent prosecution for an attempt to commit such felony."

The defence set up by the plea in question is not that the former acquittal was express, as we have seen, nor that it was operated by inference under the foregoing 25th or 29th sections of chapter 17, of the Criminal Code, but the plea is that the conviction was for murder in the second degree, and there are cited decisions of this court which are claimed to sustain the proposition. In *Lithgow* v. *The Commonwealth*, 2 Va. Cas. 297, there were several counts in the indictment; *Kirk* v. *The Commonwealth*, 9 Leigh, 627; *Page* v. *The Commonwealth*, 9 Leigh, 683; *Richards* v. *The Commonwealth*, 81 Va., 110. In all of which there were several counts in the indictment, and a conviction upon one count, was held to be an acquittal on the counts as to which the verdict was silent. But the case of *Stuart* v. *The Commonwealth*, 28 Gratt. 950, is cited as sustaining the proposition contended for in a case where the indictment contained only one count. In that case the indictment was for a felony, and the accused was convicted of a misdemeanor.

The defence here is, that the plaintiff in error, having been once in jeopardy upon the charge of murder in the first degree and acquitted, he cannot be again put in jeopardy for the same offence without violating the Constitution, both of the United States and of Virginia.

We may remark that it is a principle in our system of juris-

prudence, that a controversy once conducted to final judgment cannot be renewed in a fresh suit between the same parties.

In England in the criminal law this principle was recognized as we have said. In this State we have taken the maxim stated above on the authority of Mr. Blackstone for our unbending rule, which is in accordance with the common law. The Constitution of the United States provides that "no person shall be subject for the same offence to be twice put in jeopardy of life or limb." Act of Amend't 5, C. U. S. And although this provision binds only the United States, not extending to a State, our courts have received and followed it as expressive of the true common law rule. And our legislatures have extended and regulated the application of the principle as they appear to have the power to do under our constitution, which has granted to the legislature all legislative powers and is upon this subject silent. These provisions are found in the 10th chapter of the Criminal Code, Acts 1877–8, and as to a former acquittal it is provided : "A person acquitted by the jury upon the facts and merits on a former trial may plead such acquittal in bar of a second prosecution for the same offence, notwithstanding any defect in the form or substance of the indictment or accusation on which he was acquitted." Sec. 15.

Section 16 provides that "a person acquitted of an offence on the ground of a variance between the allegations and the proof of the indictment or other accusation, or upon an exception to the form or the substance thereof, may be arraigned again on a new indictment or other proper accusation, and tried and convicted for the same offence, notwithstanding such former acquittal."

And by the Acts of 1877–78, p. 344, the legislature added to the act of 1844–5, as stated above, now the 25th section of chapter 17 of the Criminal Code, the following : "But if a verdict be set aside on the motion of the accused and a new trial

awarded, on such new trial the accused shall be tried and such verdict may be found and sentence pronounced as if a former verdict had not been found." This provision, viewed in the light of the cases cited and the discussion which has gone before, is of plain significance, and is intended to apply to cases where in one indictment under our system a felony is charged in the indictment and a verdict is found of not guilty of the felony, but guilty of some lesser offence substantially charged therein. For example, on an indictment for robbery and a verdict of not guilty of the robbery, but guilty of assault and battery (as in *Hardy & Curry* v. *Commonwealth*, 17 Gratt. 592), or of felonious homicide and a verdict of not guilty of the felony, but guilty of involuntary manslaughter. This subject, as we have seen, is within the scope of legitimate legislative action in this State; and the power of the legislature, not being limited by any express constitutional provision, is supreme.

Whether this provision would apply to a case in which two distinct offences were charged in different counts of the same indictment, when there was a distinct verdict of acquittal as to one offence and a verdict of guilty as to the other, and judgment entered accordingly or not, it is not necessary now in in this case to decide, as this is not such a case; and in such a case the legislative enactment it seems should be applied as made, only the principle that a person cannot be twice tried for the same offence, that a person shall not be twice put in jeopardy of his life for the same offence, has been so long recognized, as we have seen, and so universally adopted as a part of our criminal jurisprudence, that such an enactment should not be extended beyond its plain words. But in this case this provision is not called in requisition at all, and probably the amendment of 1877–8, cited above, was not intended to apply to such a case, as the very next section of the act in question provides as follows: "26. If a person

indicted of murder, be found by the jury *guilty thereof*, they shall, in their verdict, find whether he is guilty of murder in the *first* or *second degree*." Of what can such a person claim to have been acquitted? He is charged with *murder*, and found guilty of *murder*, the jury held him guilty of murder in the second degree. The verdict has been set aside on his motion, and a new trial granted; obviously, the new trial, if had at all, upon this indictment must be had for *murder;* the finding of the first jury has been set aside; it no longer exists; the jury sworn in the case must find the degree of the crime upon the evidence. before them upon their conscience. The accused waived whatever right he had under the law not to be tried again by obtaining a reversal of the first judgment. The law of waiver comes from the principle of natural justice, that a man is not entitled to complain of that to which he has consented. The principle is illustrated all along the course of our criminal jurisprudence. Challenge to grand jurors is not allowed after trial, nor if the prisoner knows of a cause of challenge to a petit juror while the jury is being impaneled, and fails to make it, then he cannot bring it forward afterwards.

One who permits illegal testimony *without* exception cannot claim any privilege on that account after the trial. There are other familiar illustrations. That he may waive any objection to a second jeopardy, has been often held. If during the trial the jury is discharged with the consent of the prisoner, and sometimes with his consent by implication; *Comw'th* v. *Nix*, 11 Leigh 666; upon an imperfect verdict on which no judgment could be entered; when he absents himself at the rendering of the first verdict; and especially where a verdict, whether valid or not, has been rendered on an indictment, either good or bad, and the defendant moves in arrest of judgment, or applies to the court to vacate a judgment already

entered for any cause, as for many causes, he may, he will be presumed to waive any objection to being put a second time in jeopardy, and so he may ordinarily be tried anew. *Allen* v. *Comw'th*, 2 Leigh 727; *The State* v. *Hughes*, 2 Ala. 102; *Epes' Case*, 5 Gratt. 676; *Joy* v. *The State*, 14 Ind. 139; *Cochrane* v. *The State*, 6 Md. 400; *Younger* v. *The State*, 2 W. Va. 579. Numerous cases might be cited in this State where a second trial has been had after verdict and judgment in first trial had been set aside at the instance of the prisoner, as it is the universal practice. If the first trial was a mis-trial, then there had been no real jeopardy. But this subject will not be pursued further; enough has been said to show that the county court did not err in rejecting the plea and in refusing in effect to charge the jury that they could not convict the accused of murder in the first degree, upon the ground of the former conviction of murder in the second degree. *Livingston's Case*, 14 Gratt. 592; *State* v. *Morris*, 1 Black. 37; *Craft* v. *The Commonwealth*, 24 Gratt. 602.

As to the second assignment of error which was as to the ruling of the court in admitting the exclamation: " Will, you have killed him." When the deceased was killed two persons ran rapidly away in the same direction; one said to the other as they both ran by a by-stander, in a jerky voice, what is objected to. Upon every principle and according to all the text writers, this was part of the *res gestæ*—that is, " facts which constitute the *res gestæ* must be such as are connected with the very transaction or fact under consideration as to constitute a part of it." *Hayne's Case*, 28 Gratt. 946. It was a circumstance which was closely connected with the crime; words said between the participants under the immediate spur of the transaction. It is clearly admissible.

The third assignment is as to the ruling of the court upon the evidence offered to prove that one of the Commonwealth's

witnesses was a man of infamous character, and excluding the
same. The effort was based·upon allegations that the witness
was given to rows and given to putting them off on others.

To render a witness incompetent, the alleged infamy must
be by final judgment. Bish. Cr. L. 974–975. If the effort
was intended to affect the varacity of the witness, impair his
credibility, no such attempt appears to have been made, and
the evidence was properly excluded.

The fourth assignment is as to the refusal of the court to
give an instruction numbered 2 in the record. "That good
character proved for the prisoner is sufficient to raise a doubt
of guilt, although no doubt would have existed but for such
good character." This was properly refused. It was mislead-
ing, as a man may have been of previous good character and
yet be guilty of crime. The jury alone could properly judge
of the weight of the evidence. The instruction given by the
court in lieu thereof was correct; such evidence should be
received and weighed by them.

The refusal of the court to set aside the verdict as contrary
to the law and the evidence is the fifth and last ground of
error assigned here.

The court certifies the facts proved and the evidence of some
of the witnesses. The case was briefly as follows: During the
pendency of the agricultural fair exhibition in the town of
Culpeper in 1885, the plaintiff in error and some other youths
who belonged to the fair in various capacities, were on the
streets in the town, at night. The deceased, not a police
officer of the town, which is an incorporated town, with its own
police, but a constable of the county, without a warrant and
without displaying a badge, undertook to arrest the plaintiff
in error, who resisted; the deceased took hold of the plaintiff
in error by the arm and commenced to pull him across the
street; the plaintiff in error called for his badge and denied

his right to make the arrest; deceased replied: "I will arrest you," saying to one of the boy's companions, "he has a pistol—hasn't he got a pistol?"

Deceased then called upon a by-stander and directed him to arrest the other boy; just then the plaintiff in error *pulled loose from the deceased*, and shot him in the back of the head, and ran rapidly away, killing the deceased almost instantly. The question is, what was the degree of the crime committed?

There is nothing in the case to show that the plaintiff in error had committed any offence when arrested, unless he was carrying a *concealed* weapon, and this is somewhat negatived by the assertion of the deceased, that he had one, for the deceased would not probably have seen it if it had been concealed from ordinary observation, as he was merely a passer-by on the street at night.

The deceased was without authority to make the arrest, and the plaintiff in error was not bound to submit to an unauthorized arrest. The law upon this subject is stated by Mr. Bishop as follows:

"If one, even an officer, undertakes to arrest another unlawfully, the latter may resist him. He has no protection from his office, or from the fact that the other is an offender. But the doctrine already stated (sections 863, 868,) that nothing short of an endeavor to destroy life will justify the taking of life, prevails in this case; consequently, if the one to be arrested kills the officer or private individual in resisting, he commits thereby the lower degree of felonious homicide called manslaughter." Citing numerous decisions. 1 Crim. Law, sec. 868.

Still, in principle, life and liberty stand on substantially one foundation, life being valueless without liberty. And the reason why a man may not oppose an attempt on his liberty by the same extreme measures permissible in an attempt on his

life, may be because liberty may be secured by a resort to the laws. And if a case should arise in which the attempt was to convey a person by force beyond the reach of the laws, and then confine him perpetually, doubtless the courts would hold him justified legally, as, in the judgment of every man, he would be morally, in resisting to the death.

This doctrine, however, must be qualified by the consideration of the existence of malice, or an impulse of sudden passion, as in cases of homicide in self-defence, and by the principle which compels every man to avoid, as far as possible, the extreme necessity to take life. If, upon being assaulted, the passion of the assaulted person become greatly excited, and under that impulse he kill his assailant, though it be with a deadly weapon, the offence is manslaughter only. Yet should his resistance with a deadly weapon be made in a very cruel manner, not at all justified by the nature of the assault, the inference would be that malice, not passion, impelled the blow making his crime murder. *King* v. *Commonwealth,* 2 Va. Cas. 28. So, one who, excited in resisting the outrage of an illegal arrest, kills the aggressor with a deadly weapon, commits only manslaughter, unless acting from express malice.

The true view of the law, in reason, is that when the mere fact of an illegal arrest, attempted or consummated, appears, if the one suffering it kills the officer or other arresting person, whether with a deadly weapon or by other means, he may rely on the presumption that his mind was beclouded by passion; but if actual malice is affirmatively proved, the homicide will be murder. 1 Bish. Cr. L. sec. 699.

The question remains to be answered, was the killing in this case by reason of the sudden passion, or by reason of malice? If the first, then the killing was manslaughter only; if the second, then the killing was murder, and the verdict was right. The arrest was not made under circumstances of

brutality or violence; the plaintiff in error was pulled along by the arm; if he had shot while in actual duress, the question would have been more difficult.

But the evidence is, that he *jerked loose,* and then retreating a short distance, turned and fired at the back of an unarmed man, and then ran. There was no longer any reason to commit the homicide in order to free himself; he was already free. I see nothing to suggest reason beclouded by passion; the shooting appears to have been done coolly and deliberately, and immediately flight followed.

It is a case in which the jury was justified in finding malice; they have ascertained the degree of the crime, and the same was neither against the evidence nor without evidence, and must not be disturbed in this court. The judgment of the court below will be affirmed.

LEWIS, P., concurred in the opinion.

HINTON, J., concurred in the result.

FAUNTLEROY J., AND RICHARDSON, J., dissented.

JUDGMENT AFFIRMED.