## THE STATE *v.* PEPIN.

[No. 3,030. Filed May 17, 1899.]

CRIMINAL LAW.—*Sale of Mortgaged Chattels.—Affidavit and Information.*—An affidavit and information in a prosecution, under section 2033 Burns 1894, for an alleged unlawful sale of mortgaged personal property is not rendered bad by the absence therefrom of an allegation that the sale was made without the written consent of the owner of the claim secured by the mortgage.

From the Lake Superior Court. *Affirmed.*

W. L. Taylor, Attorney-General, Merrill Moores and J. O. Bowers, for State.

W. C. McMahan and J. C. Trainer, for appellee.

BLACK, C. J.—The appellee was prosecuted by affidavit and information for an alleged unlawful sale of mortgaged personal property, under the statute (Acts of 1891, p. 399, section 2033 Burns 1894, section 1954 Horner 1897) which provides as follows:   "A mortgagor of personal property in possession of the same, who, without the written consent of the owner of the claim secured by the mortgage, removes any of the property mortgaged out of the county where it was situated at the time it was mortgaged, or secretes or converts the same or any part thereof to his own use, or sells the same or any part thereof to any person without informing him of the existence of such mortgage, shall be fined," etc. The appellee being arraigned, filed his verified special plea, to which the State by the prosecuting attorney, demurred on the ground that the plea did not state facts sufficient to constitute a bar to the further prosecution of the cause, upon the affidavit and information then pending against the appellee, and upon the ground that the plea did not state facts sufficient to constitute a defense for the appellee to the charge alleged against him and then pending in the court below. The court overruled the demurrer, to which ruling the State excepted.    Upon motion of the appellee, the State was ruled to reply to the plea.    The State having excepted to this ruling, refused to plead over, and the court ordered that the appellee be discharged.    The overruling of the demurrer is assigned as error.

The plea showed at length a former prosecution of the appellee in the court below for the same sale; that the appellee, waiving arraignment, entered therein a plea of not guilty; that the cause was submitted to a jury duly impaneled, sworn and charged to try the cause; that the State introduced all its evidence and rested, whereupon the ap-

pellee requested the court in writing to instruct the jury to return a verdict for the defendant; that before the court had ruled upon that request, the State by its prosecuting attorney filed its written motion asking that the information be dismissed, which motion the court, over the objection of the appellee, sustained, and thereupon the court, over the objection and exception of the appellee, without requiring the jury to return a verdict, dismissed the cause and discharged the jury, and by its judgment the court dismissed and discharged the appellee from custody, which judgment still remained in full force and effect. The plea set forth the affidavit and information on which said former prosecution was based, and the question chiefly argued here relates to the sufficiency thereof. It is agreed by counsel that if the affidavit and information in the former prosecution were good, jeopardy attached, and the plea was sufficient. See *Joy* v. *State*, 14 Ind. 139.

The chief reason urged on behalf of the State against the plea is that the affidavit in the former prosecution did not contain an allegation that the sale of the mortgaged property was made without the written consent of the owner of the claim secured by the mortgage. The section of the statute on which the prosecution was based is an involved sentence, which no method of punctuation could entirely relieve of faultiness of structure. The search for the intent of the legislature will be aided by contrasting the clauses with each other. It will be observed that the word "same", wherever it occurs, relates to the words "personal property" in the first clause. If the word "who", which occurs immediately after the first clause, be supposed to be repeated before the word "secretes" and before the word "sells", and be given the office of relating to the antecedent of the first "who", that is, to "a mortgagor of personal property in possession of the same," the sense may be somewhat aided; and if, in addition to these repetitions of the word "who", the clause "removes any of the property mortgaged out of the county where it

was situated at the time it was mortgaged," be transferred and inserted immediately after the first "who," the meaning of the section will be apparent. The confusion is caused chiefly by the ill advised insertion of the clause "without the written consent of the owner of the claim secured by the mortgage" next after the first "who." It would seem to be reasonably clear that the clause "without the written consent," etc., could not have been intended to extend to the word "sells", unless it can be said to extend also to the words "secretes or converts;" and it can not reasonably be supposed that it was intended to forbid the mortgagor in possession from secreting or converting the property without the written consent of the mortgagee or other owner of the secured claim. To secrete or convert the property would be impossible with such consent.

The purpose of the statute is to discourage fraud on the part of mortgagors of personal property left in their possession, and incidentally to protect those most likely to be injuriously affected thereby. For the protection of the owner of the secured claim, the mortgagor in possession is prohibited from removing any of the mortgaged property out of the county, without the written consent of the owner of the claim; and for the protection of such owner the mortgagor in possession is also prohibited from secreting the property or any part thereof, and from converting it or any part of it to his own use. But it could not have been meant to say by implication that he may secrete it or convert it to his own use if he first obtain the written consent of the owner of the secured claim to do so.

In the case of a mere sale of the mortgaged property, the purchaser buying without information of the existence of the mortgage, and therefore without taking account of the lien thereof, yet purchasing subject to it, he might suffer loss; and it may be supposed that the legislature intended to protect him, and possibly also the holder of the secured claim, by inhibiting the sale by the mortgagor in possession to any

person without informing him of the existence of the mortgage. And it does not seem to have been intended that, in order to make the mere sale of such property a misdemeanor under this statute, it must be shown to have been a sale without the written consent of the owner of the secured claim, but it is sufficient if it be shown to have been a sale made by the mortgagor in possession to any person without informing him of the existence of the mortgage.

It follows that the affidavit in the former prosecution was not rendered bad by the absence therefrom of an allegation that the sale was made without such written consent. Some other questions of technical character are briefly suggested by counsel which do not seem to require particular notice.

Judgment affirmed.