SHEETS v. STATE OF INDIANA.

[No. 27,357. Filed June 10, 1940.]

278

*Paul E. Reed* and *William J. Reed,* both of Knox, for appellant.

*Omer S. Jackson,* Attorney General, and *Rexell A. Boyd,* Deputy Attorney General, for the State.

SHAKE, J.—This was a prosecution by affidavit for the offense of converting mortgaged personal property. The appeal is from a judgment of conviction. It is assigned that the trial court erred in overruling the appellant's motion to quash, a motion for a new trial, and a motion in arrest of judgment. The charging part of the affidavit is as follows:

". . . that on or about the 2nd day of December, 1938, at and within the County of Marshall and State of Indiana, one Floyd Sheets then and there being the mortgagor and in possession of a crop of corn consisting of fifty acres, more or less, and located upon the farm upon which the said Floyd Sheets did then and there live, one mile south of West High School on Indiana State Road Number 17 in West Township and said County and State, the said corn crop being then and there mortgage (sic) to the Buhner Fertilizer Company of Seymour, Indiana, by the said Floyd Sheets to secure the payment of $142.50, which mortgage then and there constituted a valid and subsisting lien on said property in favor of the Buhner Fertilizer Company of Semour (sic), Indiana, and the said Floyd Sheets did then and there unlawfully secrete and convert to his own use the said corn crop. . . ."

The prosecution is based on the following statute:

"A mortgagor of personal property in possession of the same, who, without the written consent of the owner of the claim secured by the mortgage, removes any of the property mortgaged out of the county where it was situated at the time it was mortgaged, or secretes or converts the same or any part thereof to his own use, or sells the same or any part thereof to any person without informing him of the existence of such mortgage, shall, on conviction, be fined not exceeding three hundred dollars ($300), to which may be added imprisonment in the county jail not exceeding six (6) months." Acts 1905, ch. 169, § 406, p. 584, § 10-4004, Burns' 1933, § 2482, Baldwin's 1934.

It is contended that the affidavit is defective because it contains no allegation to the effect that the defendant did not have the written consent of the mortgagee to convert the mortgaged property. Two distinct offenses are defined by the statute: (1) The removal of mortgaged property out of the county where it is situated without the written consent of the mortgagee; (2) the secreting or converting of mort-

gaged chattels. The affidavit is apparently based upon the latter part of the statute. It follows the language of the act and is not open to the objection urged against it. *State* v. *Pepin* (1899), 22 Ind. App. 373, 53 N. E. 842.

It is also asserted that the affidavit is bad for uncertainty because the description of the property referred to therein is so indefinite that said property could not be identified without the aid of extrinsic evidence, in that the year in which the corn was growing or grown is not disclosed. We are not impressed with this contention. The growing of corn is so general in this state, and the facts pertaining to the process so well known, that no court or jury could be misled by the description contained in the affidavit when it was recited that on or about December 2, 1938, the appellant converted 50 acres of corn then and there located on a certain described farm. Persons of ordinary intelligence would know that the crop referred to was one grown during the farm season of 1938. A 1937 crop of corn in the field would have been destroyed by the elements before December, 1938, and a 1939 crop would not have been planted that early.

At the trial the state introduced in evidence the record of the mortgage in the county recorder's office. The appellant admits that this evidence is sufficient to show that the mortgage was duly recorded, but says that it does not disclose the terms of the instrument. In this the appellant is in error. The bill of exceptions reveals quite clearly that both the mortgage and the entry of its recordation were in evidence.

The sufficiency of the evidence has given us much concern. We have been particularly troubled in determining whether there was any evidence to establish

that the corn crop which appellant was alleged to have converted, had any value, or, to put it another way, whether any property which might have been the subject of conversion was in existence at the time the appropriation is supposed to have taken place. We have read the entire record and it appears that on July 5, 1938, the appellant mortgaged to the Buhner Fertilizer Company, of Seymour, Indiana, 50 acres, more or less, of growing corn to secure a note for $142.50, payable on or before December 1, 1938. There was evidence that the corn was about knee-high at the time. Some time in the fall, and before the note was due, a representative of the fertilizer company had a conversation with the appellant at his home, at which time the appellant told the agent that the corn was not good and that the company might have it if they wanted it. After the maturity of the note there was another conversation between the appellant and the company representative. At that time the appellant stated that he could not pay the note until the latter part of January, due to the fact that his hogs were not fattened. He further stated that he had a hundred head of hogs and cattle that he wanted to turn into the cornfield for a couple of hours a day. When he was pressed to fix a definite time when the note would be paid, he said he intended to pay it, but "if you get smart about it I will be damned if I will pay it at all." It is the theory of the state that the appellant converted the mortgaged corn to his own use by turning his livestock into the field and permitting them to consume it. The only evidence that we have been able to find to indicate that there was a crop of corn in existence at the time of the alleged conversion, was in the testimony of the agent of the fertilizer company. He said with reference to his visit to the appellant's farm in December, 1938:

"Q. And did you see anything about the corn field?

"A. The corn was pretty good along the road and back of the orchard; in the high ground."

The witness stated that he observed hogs and horses in the cornfield at the time. The same witness visited the farm again in January, after the alleged conversion, and his testimony with reference to that visit was as follows:

"Q. When you were there in January, state what you saw in the field if anything?

"A. The corn stalks were practically all that were left that you would notice; the corn and leaves were all eaten off."

The evidence quoted is sufficient to support the inference that a crop of corn was produced on the land in question during the season of 1938, and that the appellant converted it by allowing it to be devoured by his stock.

The appellant offered no evidence in his own behalf, and no question is therefore presented by the denial of his motion for a directed verdict that is not fully answered by our conclusion that the verdict is sustained by the evidence. The same is true with respect to his motion in arrest of judgment in the light of our decision that the affidavit was sufficient to charge a public offense.

The judgment is affirmed.

NOTE.—Reported in 27 N. E. (2d) 769.