## McELVAINE v. BRUSH.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 1125. Argued December 7, 1891. — Decided December 21, 1891.

The provisions in the New York Code of Criminal Procedure, (§§ 491, 492,) respecting the solitary confinement of convicts condemned to death, are not in conflict with the Constitution of the United States, as they are construed by the Court of Appeals of that State.

This court follows the adjudications of the highest court of a State in the construction of the statutes of that State.

*Medley, Petitioner*, 134 U. S. 160, explained. *In re Wood*, 140 U. S. 278, followed.

THE case is stated in the opinion.

*Mr. George M. Curtis* for appellant.

The court declined to hear argument for the appellee. *Mr. Charles F. Tabor*, Attorney General of the State of New York, filed a brief for appellee.

MR. CHIEF JUSTICE FULLER delivered the opinion of the court.

Charles McElvaine was convicted in the Court of Sessions, Kings County, in the State of New York, on October 23, 1889, of the crime of murder in the first degree, committed August 22, 1889, and on October 25, 1889, was sentenced to death. From the judgment of conviction an appeal was duly taken by McElvaine to the Court of Appeals of the State of New York, where the judgment was reversed and a new trial granted. *People* v. *McElvaine*, 121 N. Y. 250. A new trial was had and resulted on September 29, 1890, in a conviction for the aforesaid crime, and on October 1, 1890, McElvaine was again sentenced to death. A second appeal was taken to the Court of Appeals and the judgment was affirmed February 24, 1891. *People* v. *McElvaine*, 125 N. Y. 596.

The Court of Appeals sent down its remittitur to the Court of Sessions to enforce the judgment, as rendered against McElvaine, according to law, and thereafter the judgment of the Court of Appeals was made the judgment of the Court of Sessions. On March 6, 1891, it was ordered and adjudged that the judgment of conviction and sentence thereon of October 1, 1890, be enforced and executed in the manner provided by law during the week beginning on Monday the 20th of April, 1891; and the court issued its warrant under the hands of the judges thereof (including the presiding judge) to the agent and warden of Sing Sing prison, commanding him to execute said

judgment and sentence, by putting the condemned to death, "in the mode, manner and way, and at the place, by law prescribed and provided."

April 21, 1891, McElvaine, by his attorney, presented to the judge of the Circuit Court of the United States for the Southern District of New York a petition praying that a writ of *habeas corpus* issue to Augustus A. Brush, the then agent and warden of Sing Sing prison, requiring him to produce the body of said McElvaine before said court at some time to be designated in said writ, and afterwards such proceedings were had that on said 21st day of April, 1891, an order was made denying the prayer of said petition, from which order McElvaine appealed to this court, which appeal was allowed by the said judge; and the clerk of the court was directed to transmit a transcript of the petition, decision and order thereon, and of the appeal. This transcript was accordingly transmitted, and, by stipulation, is accompanied by a certified copy of the warrant for McElvaine's execution.

We have examined and considered all the grounds alleged in the petition for the allowance of the writ, but deem it unnecessary to refer to any, save those presented in the brief and argument of petitioner's counsel.

Sections 491 and 492 of the New York Code of Criminal Procedure are as follows:

"§ 491. When a defendant is sentenced to the punishment of death the judge or judges holding the court at which the conviction takes place, or a majority of them, of whom the judge presiding must be one, must make out, sign and deliver to the sheriff of the county, a warrant stating the conviction and sentence, and appointing the week within which sentence must be executed. Said warrant must be directed to the Agent and Warden of the State prison of this State designated by law as the place of confinement for convicts sentenced to imprisonment in a State prison in the judicial district wherein such conviction has taken place, commanding such Agent and Warden to do execution of the sentence upon some day within the week thus appointed. Within ten days after the issuing of such warrant the said sheriff must deliver the defendant,

. together with the warrant, to the Agent and Warden. of the State prison therein named. From the time of said delivery to the said Agent and Warden, until the infliction of the punishment· of death upon him, unless he shall be lawfully discharged from such imprisonment, the defendant shall be kept in solitary confinement at said State prison, and no person shall be allowed access to him without an order of the court, except the officers of the prison, his counsel, his physician, a priest or minister of religion, if he shall desire one, and the members of his family.

"§ 492. The week so appointed must begin not less than four weeks and not more than eight weeks after the sentence. The time of the execution within said week shall be left to the discretion of the Agent and Warden to whom the warrant is . directed; but no previous announcement of the day or hour of the execution shall be made, except to the persons who shall be invited or permitted to be present at said execution as hereinafter provided." N. Y. Code Crim. Proc. 1890, pp. 128, 129.

It is contended that the solitary confinement thus provided for constitutes cruel and unusual punishment, and brings the statute within the inhibition of the Eighth Amendment to the Federal Constitution.

The first ten articles of amendment were not intended to limit the powers of the States in respect of their own people, but to operate on the Federal government only; but the argument is, that so far as those amendments secure the fundamental rights of the individual, they make them his privileges and immunities as a citizen of the United States, which cannot now, under the Fourteenth Amendment, be abridged by a State; that the prohibition of cruel and unusual punishments is one of these; and that that prohibition is also included in that "due process of law" without which no State can deprive any person of life, liberty or property.

We held in the case of *Kemmler*, 136 U. S. 436, that this statute in providing for the punishment of death by electricity, was not repugnant to the Constitution of the United States when applied to a convict who committed the crime for which he was convicted after the act took effect; that the enactment of the statute was in itself within the legitimate sphere of the

legislative power of the State, and in the observance of those general rules prescribed by our systems of jurisprudence; and that as the legislature of the State of New York had determined that it did not inflict cruel and unusual punishment, and its courts had sustained that determination, we were unable to perceive that the State had thereby abridged the privileges or immunities of petitioner or deprived him of due process of law.

That case is decisive of this, although the character of the confinement of the condemned pending his execution was not alluded to.

All that was held in *Medley, Petitioner*, 134 U. S. 160, was that a statute passed after the commission of the crime of murder, which added to the punishment of death, (that being the punishment when the crime was committed,) the further punishment of imprisonment in solitary confinement until the execution, was, when attempted to be enforced against a convict so situated, an *ex post facto* law, and that the sentence inflicting both punishments was void. The language of the opinion upon the subject of solitary confinement tended to illustrate the conclusion arrived at, but did not enlarge it.

And in *Holden* v. *Minnesota*, 137 U. S. 483, it was assumed that a similar statutory provision was not open to constitutional objection.

It is further urged that the warrant did not direct the infliction of solitary confinement; that it indicated no specific mode of death; and that the mode and manner of the infliction of the death penalty were not specified. But as the warrant commanded the warden to cause the judgment and sentence to be executed and enforced, and the condemned to be put to death "in the mode, manner and way and at the place by law prescribed and provided," this would seem to be ample authority to him for the confinement, as well as the infliction of the penalty of death, as prescribed by the statute; and, so far as the confinement had taken place under the first sentence and warrant, that resulted from the voluntary act of the petitioner in prosecuting an appeal.

In *People* v. *Brush*, reported in advance of the official series in the Northeastern Reporter, vol. 28, p. 533, it was

held by the Court of Appeals of New York, that an appeal from a judgment sentencing a defendant for murder in the first degree, operates only as a stay of execution of the death penalty, and not of the confinement of the defendant in the penitentiary pending the appeal, under the Code of Crim. Proc. of N. Y. sec. 528, which provides that "when the judgment is of death, an appeal to the Court of Appeals stays the execution, of course, until the determination of the appeal;" and it was also held that under the statute providing for execution by electricity, a warrant which directed that execution be done by putting defendant to death in the mode, manner and way and at the place by law prescribed and provided, was sufficient.

The general rule of decision is that this court will follow the adjudication of the highest court of a State in the construction of its own statutes; and there is nothing in this case to take it out of that rule. We are of opinion that the record does not disclose that the petitioner is restrained of his liberty in violation of the Constitution and laws of the United States; and, as observed by Mr. Justice Harlan in *In re Wood*, 140 U. S. 278, 289, it was not intended by Congress that the courts of the United States should, by writs of *habeas corpus*, obstruct the ordinary administration of the criminal laws of the States through their own tribunals.

*The judgment must be affirmed, and the mandate issue at once, and it is so ordered.*