## ROSENBERG v. CARROLL et al.

United States District Court,
S. D. New York.
June 22, 1951.

See also 99 F.Supp. 629.

vised Criminal Code, 18 U.S.C. § 794], and sentenced in the United States District Court for the Southern District of New York on April 5, 1951, to be executed until dead. The judgment of the court ordered that the relator be committed to the custody of the Attorney General or his authorized representative for appropriate detention pending execution of the death penalty. On April 11, 1951, relator was transferred by order of the Bureau of Prisons from the Women's House of Detention in New York City, where she had been detained during her trial, to the death cell block for female prisoners at Sing Sing Prison, Ossining, New York.

Relator's petition alleges two grounds for the relief sought. She asserts (1) that she was transferred unlawfully to the death cell block at Sing Sing in that she was transferred there for the purpose of "breaking" her into confessing the crime for which she was convicted and (2) that her incarceration there is cruel and inhuman punishment in violation of the Eighth Amendment of the Constitution of the United States.

The government denies these allegations and contends that the relief sought cannot be obtained by way of writ of habeas corpus—that the only function of such a writ is to challenge the legality of the relator's detention. It is not necessary to decide this point for, even assuming that the procedure here adopted is the proper one, the relator is not entitled to the relief she seeks.

Title 18 United States Code, § 4082, provides:

"Persons convicted of an offense against the United States shall be committed * * * to the custody of the Attorney General of the United States or his authorized representative, who shall designate the places of confinement where the sentences shall be served.

"The Attorney General may designate *any* available, suitable, and appropriate institutions, whether maintained by the Federal Government or *otherwise,* * * *.

"The Attorney General may order any inmate transferred from one institution to another. * * *"

---

Emanuel H. Bloch, New York City, for relator-petitioner.

Irving H. Saypol, U. S. Atty., New York City, for respondents, Roy M. Cohn, James B. Kilsheimer, III, Asst. U. S. Attys., New York City.

GODDARD, District Judge.

This is a proceeding, initiated by a writ of habeas corpus, in which the relator seeks a retransfer from the death cell block at Sing Sing Prison to the Women's House of Detention in New York City.

Relator was convicted of espionage in violation of Title 50 U.S.C. § 34 [1948 Re-

632

[*underlining* added for emphasis]

 The Attorney General may transfer a convict from a federal to a state prison without notice to or consent of the convict. Title 18 United States Code, § 4002; Chapman v. Scott, D.C., 10 F.2d 156, affirmed 2 Cir., 10 F.2d 690, certiorari denied 270 U.S. 657, 46 S.Ct. 354, 70 L.Ed. 784; Ex Parte Karstendick, 93 U.S. 396, 23 L.Ed. 889; Bowen v. United States, 10 Cir., 174 F.2d 323. The Attorney General therefore had authority to transfer the relator to Sing Sing Prison.

 No evidence was presented to support relator's allegations in her petition that she was transferred there in an effort to "break" her or that the Attorney General exercised his discretion for an ulterior purpose or in any but a lawful manner.

Indeed, the initiative for her transfer did not come from the Attorney General or any of his subordinates. The contract between the United States and the City of New York under which federal female prisoners are detained in the Women's House of Detention, a New York City Institution, does not provide for detention of prisoners sentenced to death. The Commissioner of the Department of Correction, City of New York, requested that the federal authorities transfer her because of the crowded condition of the House of Detention and because of the lack of proper facilities there for the detention of a prisoner awaiting the execution of a death sentence.

The relator's second ground for relief is also without merit.

 The Eighth Amendment was adopted to prevent inhuman, barbarous, or torturous punishment or some punishment unknown at common law. Hemans v. United States, 6 Cir., 163 F.2d 228; In re Pinaire, 46 F.Supp. 113.

Section 3566 of Title 18 United States Code, provides: "The manner of inflicting the punishment of death shall be that prescribed by the laws of the place within which the sentence is imposed. The United States marshal charged with the execution of the sentence may use available local facilities * * *".

 There is no specific provision in the United States Code as to the place of incarceration for federal prisoners awaiting the infliction of the punishment of death. Apparently the Congress intended that the general provisions quoted and discussed above should apply in this situation. These provisions give the Attorney General authority to determine the place of incarceration for all federal prisoners. There is no logical reason why these provisions should not be applicable here.

 Federal prisoners confined to a state prison are subject to the same discipline and treatment as those sentenced by the court of the state in which the prison is located. See Fields v. United States, 27 App.D.C. 433, certiorari denied, 1906, 205 U.S. 292, 27 S.Ct. 543, 51 L.Ed. 807.

By statute prisoners awaiting the infliction of a death sentence imposed by New York State courts shall be kept " * * * in solitary confinement at such state prison and no person shall be allowed access to him without an order of the court, except the officers of the prison, his counsel, his physician, a priest or minister of religion, if he shall desire one, and the members of his family." New York Code of Criminal Procedure § 491. The death cell block at Sing Sing is used for such prisoners.

The death cell block for female prisoners has three cells, each of which, according to the testimony, is identical in all respects and is about twelve feet long and four feet wide. One of these cells is occupied by the relator. There is a fourth cell in which there is a standing shower.

Each cell has a cot or bunk, a chair, a small table, a toilet, and a wash stand. The cells were inspected by the United States Marshal and the Assistant Director of Prisons for the United States before the relator was transferred there and the cells were found to be sanitary and adequate.

During the daytime enough sunlight enters the cells so that one in such a cell can read without the aid of artificial light. At night there are adequate lighting facilities. The relator is allowed reading periods.

There is a matron in attendance at all times. The relator is allowed visitors in accordance with the rules governing state prisoners in similar circumstances.

Outside the cell block is an exercise yard which is about fifty feet wide and fifty or

sixty feet long. This yard is bounded by a twenty foot wall. The relator is allowed to exercise in this yard two hours every morning and two hours every afternoon.

The relator is provided with the same facilities and is accorded the same treatment as a state prisoner who might be awaiting execution of the death penalty. She is governed by the usual rules and regulations of the prison.

 Confinement of this character has been followed in the State of New York for many years. The legislature and the Courts of New York have determined that such confinement does not inflict cruel punishment. See McElvaine v. Brush, 142 U.S. 155, 12 S.Ct. 156, 35 L.Ed. 971; In re Kemmler, 136 U.S. 436, 10 S.Ct. 930, 34 L.Ed. 519. These decisions, holding that confinement such as the relator is now subjected to did not deprive those state prisoners so confined by New York State authorities of due process of law, are highly persuasive and reflect the considered judgment of the legislature and Courts of New York that there are good and sufficient reasons for confinement of this character and that it is not cruel or inhuman.

The relator presented no convincing evidence that her confinement was cruel, inhuman, or unusual.

Accordingly, my conclusion is that the relator's transfer to Sing Sing Prison was lawful and that her confinement in the death cell block there is not unusual or cruel and inhuman within the meaning of the Eighth Amendment of the Constitution of the United States.

Writ dismissed.