## JOHNSON *v.* STATE OF INDIANA.

[No. 31077. Filed April 2, 1969. Rehearing denied July 25, 1969.]

*Clifford M. DeWitt, Butler, Brown, Hahn & DeWitt,* of Indianapolis, for appellant.

*John J. Dillon,* Attorney General, *Rex P. Killian,* Deputy Attorney General, for appellee.

DeBRULER, C. J.—This is an appeal from a conviction for violation of the 1935 Firearms Acts. It was charged that Appellant did "carry a pistol on or about his person in a place not then and there his abode nor fixed place of business, and without a license therefore. . . ." Trial was by jury and Appellant was sentenced to one year in prison. Appellant alleges as grounds for reversal a procedural error, an error in the admission of certain evidence, and that there was insufficient evidence to sustain the verdict.

Appellant's first argument relies on the following facts: Appellant was arrested on March 28, 1963, and an affidavit was filed against him on May 23, 1963. On March 23, 1964, the prosecutor filed a Motion for Nolle Prosequi on the ground that there was insufficient evidence to sustain a conviction. The trial court granted the motion without notice to Appellant. On August 10, 1965, another affidavit was filed against Appellant charging the same offense in identical terms. The trial court overruled Appellant's Motion to Discharge and that ruling is now urged as erroneous for two reasons.

(1) Appellant argues that, in his absence, the trial court cannot grant a Motion to Nolle for insufficient evidence and then at a later date allow the same charge to be brought against him. It is said that in these circumstances the dismissal is equivalent to an acquittal and is, therefore, a bar to the second prosecution.

Appellant cites several cases in support of his position. The basic case is *Kistler v. State* (1879), 64 Ind. 371, where the prosecutor, in the defendant's absence and with the leave of the trial court unconditionally struck the cause from the docket. The trial court later allowed the prosecutor to reinstate the same indictment on the docket. This Court reversed saying,

"What we now decide in this case is, that the action of the prosecutor and court, in striking the case at bar from the docket unconditionally and absolutely, amounted to a *nolle prosequi,* and that the reinstatement of said cause,

and the subsequent trial of defendant, were illegal acts." 64 Ind. at 375.

In *State v. Dix* (1897), 18 Ind. App. 472, 48 N. E. 261, the trial court refused to allow the prosecutor to reinstate an indictment after it had been stricken from the docket with leave to reinstate. The Appellate Court affirmed saying,

> "Reasoning from the case of *Kistler v. State, supra,* we think the action of the court, upon motion of prosecuting attorney, and in the absence of the defendant, in striking the case from the docket, amounted, in effect, to a dismissal or *nolle prosequi.*" 18 Ind. App. at 474.

In *Southerland v. State* (1911), 176 Ind. 493, 96 N. E. 583, this Court held that striking an indictment from the docket would *not* be treated as a *nolle* where the defendant had fled the jurisdiction. Those cases dealt with the status of an indictment after it was stricken from the docket. They held it was a nullity and could no longer function as the first pleading in a criminal prosecution. Since it was not in issue, those cases did *not* deal with the question of whether a new pleading or indictment might have been obtained charging the same offense in identical terms.

In our view this case is controlled by *Winters v. State* (1927), 200 Ind. 48, 160 N. E. 294. There the prosecutor dismissed an affidavit in the city court, over defendant's objection, and filed a new affidavit charging the same offense in the circuit court. In affirming, this Court said:

> "Appellant contends that where a prosecuting officer files a criminal charge against a person in a court having jurisdiction, he cannot dismiss the case over the objection of the defendant, or without the consent of the defendant having been obtained, and then 'refile the same charge' (i.e. begin another prosecution for the same offense) in another court of competent jurisdiction and there prosecute the defendant. He bases this contention upon the rulings of this court in the cases of *State v. Woulfe* (1877), 58 Ind. 17, 19; *Kistler v. State* (1878), 64 Ind. 371, and *State v. Dix* (1897), 18 Ind. App. 472, where voluntary

dismissals of criminal proceedings against defendants by prosecuting attorneys in the absence of the defendants and without their consent were held to be equivalent to *nolle prosequi*. Such a prosecution cannot thereafter be reinstated over the objection of the defendant. *Kistler v. State, supra.* The question raised in the case at bar, however, is essentially different from that decided in the cases upon which appellant relies. Here, the prosecuting attorney did not seek to reinstate a prosecution where there had been a dismissal, but filed a new action. In such a case the dismissal or *nolle prosequi* entered before the jury was empaneled and sworn is not equivalent to an acquittal and does not bar the subsequent prosecution for the same offense." 200 Ind. at 50.

This has long been the law in this State. *Joy v. State* (1860), 14 Ind. 139; *Halloran v. State* (1881), 80 Ind. 586; *Dye v. State* (1891), 130 Ind. 87, 29 N. E. 771; *Lynch v. State* (1960), 240 Ind. 376, 165 N. E. 2d 762.

Since the dismissal in the present case occurred prior to jeopardy attaching, there was no bar to refiling an affidavit charging the same offense in identical terms. The only constraint on this procedure is the Appellant's right to a speedy trial. To this question we now turn.

(2) Appellant argues that even if the prosecutor had the right to file the second affidavit the Appellant still had a constitutional right to a speedy trial under Art. I, § 12 of the Indiana Constitution. The Appellant alleges that the period from the filing of the first affidavit to the filing of the second is of such a length as to allow Appellant's discharge under Burns' Ind. Ann. Stat. § 9-1403 or Supreme Court Rule 1-4d, whichever is held to apply to this case. This constitutional right had been implemented by that statute and as of July 1, 1965, by the Supreme Court Rule which superceded the statute. The Appellant himself argues that the statute should apply to this case.

We agree that Appellant had a right to a speedy trial and that Burns' § 9-1403 should be applied to this case rather

than Supreme Court Rule 1-4d. The Rule went into ■ effect July 1, 1965, and has been held to apply only where charges had been initiated after that date. *State ex rel. Uzelac v. Lake Criminal Court* (1965), 247 Ind. 87, 212 N. E. 2d 21. The fact that the affidavit on which appellant was convicted was filed after that date is not controlling. The proceedings which started the time running as far as a speedy trial is concerned occurred prior to that date.

The statute says:

"No person shall be held by recognizance to answer an indictment or affidavit, without trial, for a period embracing more than three terms of court, not including the term at which a recognizance was first taken thereon, if taken in term time; but he shall be discharged unless a continuance be had upon his own motion, or the delay be caused by his act, or there be not sufficient time to try him at such third term; and, in the latter case, if he be not brought to trial at such third term he shall be discharged, except as provided in the next section." Burns' § 9-1403.

In applying this statute to the case we do not count the time between the filing of the first affidavit and the *nolle,* because Appellant does not show that during that time no continuance was had "upon his own motion", or that the delay was not "caused by his act". In his unsworn brief in the trial court supporting his motion to reconsider the denial of discharge Appellant said:

"The defendant realizes that if he seeks to have the case dismissed on the grounds of delay in trial for more than three successive terms of the court, he must show that the delay complained of was caused by the State, and not by him, and that it was not had upon his request or upon his agreement. *Sullivan v. State*, 215 Ind. 343. The defendant submits that in accordance with the *Sullivan* rule, counsel for the defendant in no way contributed to the delay in bringing this charge before this court, nor do counsel file frivolous, irrelevant, or immaterial pleadings thereto. . . ."

In his brief on appeal, p. 45, Appellant says:

"The Appellant feels that some mention should be made to the exception which existed not only under the old law, but is still maintained in the Supreme Court Rule 1-4D. This exception, of course, refers to the case in which the delay is in itself caused by the defendant's own act and therefore, is not totally chargeable to the State. This concept has been enunciated in the case of *Sullivan v. State,* 215 Ind. 343, 19 N. E. 2d 739, where the Court held that the defendant must affirmatively show that the delay has not been a result of his own act. It seems clear to the Appellant and he would stress here, that the period of time occurring between the date of the granting of the Motion to Nolle on the original charge, March 23, 1964, and the date of the refiling of the same identical charge on August 10, 1965, was in no way the fault of the defendant and it is this period of time to which the Appellant directs the Courts attention and upon which he based his Motion to Discharge in the court. This period of time was imposed upon the Appellant through no act of his own and the Appellant maintains that he has met both the requirements of the old law, the Supreme Court rules as they exist today and the *Sullivan* rule, *supra."*

We note that in his appeal brief Appellant does *not* refer to the time between the filing of the first affidavit and the *nolle.* The transcript in this case does not reveal what proceedings took place during that time under a different cause number. There is no sworn statement by Appellant or his counsel concerning that period of time. It is up to the Appellant to bring himself within the statute and he has not done so with this record. *Sullivan v. State* (1939), 215 Ind. 343, 19 N. E. 2d 739.

The Appellant himself does *not* urge that we count any time after August 10, 1965, the date of filing the second affidavit. If he were to do so he would be faced with showing the trial itself, which took place on July 25, 1966, was not delayed by any dilatory motions by the Appellant. Rather he argues that no trial could take place *even if* it were had on the date of the filing of the second affidavit, therefore, what occurred after that date is not relevant here.

The *only* period relevant, then, is the period between the *nolle* on March 23, 1964, and the filing of the second affidavit on August 10, 1965. Appellee argues that this period should not be counted at all because there is no allegation that Appellant was held by recognizance during this period and, therefore, the statute does not apply. We do not agree. The right to a speedy trial is rooted in the Indiana Constitution, Art. 1, § 12, and the statute is an implementation of that right, *State ex rel. Uzelac v. Lake Criminal Court, supra.* The statute cannot operate to defeat the right or invalidly limit it. The value of the right to an accused must not be underestimated. First, it sets a limit to the length of time he may be held by recognizance with all the restrictions on his life that being so held implies. A second important reason for requiring a speedy trial is that it insures a hearing while the incident is fresh in the minds of the witnesses and before they become unavailable to testify. This will be especially useful to an accused because his witnesses will normally not have written reports and records with which to refresh their memories. This consideration applies equally to those *not* held by recognizance. Thirdly, under the rule we adhere to in this case, an accused, after a *nolle*, does not have to labor for an undue length of time under the threat of a renewed prosecution for the same offense.

We hold, therefore, that where a prosecutor nolles and later refiles an affidavit or indictment charging the same offense, the period between the *nolle* and the refiling will be counted, in resolving the speedy trial issue, as if the accused had been held by recognizance during that period.

Our position here is supported by the United States Supreme Court where, in a recent decision, they held that the federal right to a speedy trial guaranteed by the Sixth Amendment applied to the states via the due process clause of the Fourteenth Amendment. In *Klopfer v. North Carolina* (1967), 386 U. S. 213, 18 L. Ed. 2d 1, 87

S. Ct. 988, the prosecutor nolled "with leave to reinstate" and the defendant was discharged from recognizance. Defendant objected to the *nolle* because so much time had elapsed since the arrest and under state law the prosecutor was left with the right to bring the charge again at any time. The United States Supreme Court reversed, saying:

> "The North Carolina Supreme Court's conclusion—that the right to a speedy trial does not afford affirmative protection against an unjustified postponement of trial for an accused discharged from custody—has been explicitly rejected by every other state court which has considered the question. . . . We too believe that the position taken by the court below was erroneous." 18 L. Ed. 2d at 6.

The final question is, then, applying the statute to the crucial period, did three terms of court elapse between the term in which the *nolle* was filed and the term in which the second affidavit was filed? This case was in the Marion County Criminal Court which at that time had two six-month terms per year, beginning on the first Monday in January and July, respectively. (Acts 1881 [Spec. Sess.] ch. 4, § 7, as amended by Acts 1919, ch. 187, § 1, the same being Burns' Ind. Ann. Stat. § 4-2309 [1946 Repl.]). Obviously, only two terms elapsed between the first term of 1964 in which the *nolle* was taken and the second term of 1965 in which the second affidavit was filed. Therefore, the statute did not give Appellant the right to be discharged under it as it would take a period of three terms to come within the statute. The trial court was correct on both issues in denying Appellant's Motion for Discharge.

The second error alleged by the Appellant is that the trial court admitted into evidence a pistol which had not been properly identified. The pertinent facts are these: At the trial, Officer Rieger testified to finding a snub-nosed, .38 caliber, Smith and Wesson pistol on the ground near the door on the passenger side of the car in which Appellant was sitting. Appellant was sitting in the right front seat. Officer Rieger

turned that gun over to Sergeant Fisher at the scene of the arrest. During the trial, Officer Rieger was handed State's Exhibit No. "1", a snub-nosed, .38 caliber, Smith and Wesson pistol and asked if the Exhibit was identical to the weapon he had found at the arrest scene. Officer Rieger stated it was, but after objection by the Appellant he admitted that he had not recorded the serial number. He then said it was similar to the gun that he had picked up in make, model and type of gun. He also testified that he had found and turned over to Sergeant Fisher only one pistol that day. Appellant alleges that this is the sole testimony relative to the identification of the pistol and that it is not a sufficient identification of the pistol to allow it to be introduced into evidence. If the Appellant were correct in stating that this was the only testimony relative to the identification of the pistol it would be a close question. However, the record shows the following testimony by Sergeant Fisher:

"Q. Now, Sergeant I'll show you what has been marked for identification purposes only, State's Exhibit no. 1 and ask you if you've seen it before?

A. May I now refer to my notes?

Q. For the purpose of checking the serial number?

A. Yes sir. Yes sir, I've seen this gun before.

Q. Where and when?

A. On March 28 on Warman Street south of Washington Street.

Q. Is that March 28, 1963?

A. Yes sir.

Q. Is that the weapon that you previously stated was handed to you by Officer Rieger?

A. This is the gun that was handed to me by Officer Rieger."

This shows that Sergeant Fisher identified State's Exhibit No. "1" by serial number as the pistol handed to him by

Officer Rieger at the arrest scene. Officer Rieger stated he found only one pistol and that he had personnally handed it to Sergeant Fisher at that time. This is a stronger identification even than the case where an identifying scratch is put on an object and later identified by the maker of the scratch. See *Dixon v. State* (1963), 243 Ind. 654, 189 N. E. 2d 715. Here there is a complete chain of custody and an identification by serial number. We believe that this is a sufficiently positive identification of the pistol.

Defendant urges as the third error that there was insufficient evidence to sustain the verdict. Upon such an allegation we must construe the evidence most favorably to the State and see if there is some evidence from which a reasonable jury could infer the Appellant was guilty beyond a reasonable doubt. *Wojcik v. State* (1965), 246 Ind. 257, 204 N. E. 2d 866; *Wynn v. State* (1966), 247 Ind. 247, 214 N. E. 2d 644; *Coach v. State* (1968), 250 Ind. 226, 235 N. E. 2d 493. The following evidence is determinative of this issue. Sergeant Fisher testified that he spotted a car with a reported stolen license plate on West Washington Street. He followed the car, radioed for help and with his siren on pulled the car over two blocks South of Washington Street on Warman Avenue. There were three men in the car one of whom was the Appellant who was riding in the right front seat. The third man was in the back seat behind the Appellant. Sergeant Fisher testified in part as follows:

"Q. Right before you stopped the car and when you stopped it what, if anything, did you see Leon Johnson do?

A. I observed the defendant throw what I thought was a gun out the window.

Q. When you say a gun . . .

A. A pistol."

On cross-examination Sergeant Fisher further testified:

"Q. You don't know of your own knowledge what, if anything, was thrown out of that car do you?

A. As I testified I saw the defendant throw what I thought to be a gun out the window.

Q. Alright now, you saw him throw something out the window?

A. A gun.

Q. You are testifying it was a gun?

A. I thought it was a gun.

Q. I'm asking you under oath if you saw the defendant throw a gun out of the car. Now I'm not asking you for any guessing I'm asking you if you saw the defendant throw a gun out of the car, Sergeant Fisher?

A. I was sure it was a gun.

Q. Can you say under oath that you saw the defendant throw a gun out of the car, Sergeant Fisher?

A. Yes sir, I believe I could.

Q. You will so state to the jury right now?

A. Yes sir."

When Officer Rieger arrived he walked around to the passenger side of the car where Appellant was still sitting and stepped on a snub-nosed, .38 caliber, Smith and Wesson pistol. He picked the pistol up and gave it to Sergeant Fisher. It was introduced at the trial as State's Exhibit No. "1". Officer Rieger testified in part as follows:

"Q. So you went on around the car. Now approximately how far from the back of the automobile did you find this gun?

A. The gun was setting on the right hand side on the ground, just about where you would open the door up and step out of the car.

Q. In other words you're testifying to the Court that it was dropped down to the side. Apparently just dropped down to the side?

A. That's right.

. . . . .

Q. In relationship to this door on the right hand side, where was the gun from the standpoint of whether it was forward of the door or behind the door?

A. It was just—as you would open the door and you step out the gun was laying right there."

We believe this is evidence from which it could have been validly inferred that the defendant was carrying a pistol on or about his person. A police officer saw Appellant ▪ throw a gun out of the window of the car and another police officer found a gun beside the car, picked it up, gave it to his superior officer, Sergeant Fisher, and that gun was introduced into evidence at the trial. Other jurisdictions are in accord with this decision. *Commonwealth v. Whitman* (1963), Pa. Super., 186 A. 2d 632; *Ross v. State* (1967), Del. 232 A. 2d 97; *Brookhart v. Maryland* (1965), 238 Md. 625, 209 A. 2d 601.

Judgment affirmed.

Arterburn and Hunter, JJ., concur; Givan, J., not participating; Jackson, J., dissents with opinion.

### DISSENTING OPINION.

JACKSON, J.—I am not in agreement with the majority opinion herein and dissent to a portion thereof.

The problem confronting the court in the case at bar arises by virtue of the fact that apparently there were two prosecutions instituted for the same offense, both by affidavit. The first affidavit was filed in Criminal Court of Marion County, Division 1, under the name and style of "State of Indiana v. Leon Johnson, Cause No. CR 28906Y," on May 23, 1963. The affidavit charged appellant with violation of the 1935

Firearms Act. On July 11, 1963, appellant, in person and by counsel, appeared for arraignment on said charge and entered a plea of not guilty to the charge. Thereafter, on March 23, 1964, without notice to appellant or his counsel, the State filed a motion to nolle said charge on account of "insufficient evidence to sustain a conviction." The motion to nolle was approved by the Honorable Eugene M. Fife, Jr., on said date and charge was nolled.

Later, on August 10, 1965, there was filed in the Criminal Court of Marion County, Division 2, an affidavit charging appellant with Violation of 1935 Firearms Act, under the name and style of *State of Indiana v. Leon Johnson,* Cause No. CR 650648.

The first affidavit, filed May 23, 1963, reads as follows, to-wit:

"BE IT REMEMBERED, That, on this day before me, NOBLE R. PEARCY Prosecuting Attorney of the Nineteenth Judicial Circuit, personally came HARTWELL JARVIS who, being duly sworn, upon his oath says that LEON JOHNSON on or about the 28 day of MARCH, A.D. 1963, at and in the County of Marion in the State of Indiana, did then and there unlawfully and feloniously carry a pistol on or about his person in a place not then and there his abode nor fixed place of business, and without a license therefor, then and there being contrary to the form of the statute in such case made and provided and against the peace and dignity of the State of Indiana."

The second affidavit filed August 10, 1965, reads as follows:

"BE IT REMEMBERED, That, on this day before me, NOBLE R. PEARCY Prosecuting Attorney of the Nineteenth Judicial Circuit, personally came HARTWELL JARVIS who, being duly sworn, upon his oath says that LEON JOHNSON on or about the 28th day of MARCH, A.D. 1963, at and in the County of Marion in the State of Indiana, did then and there unlawfully and feloniously carry a pistol on or about his person in a place not then and there his abode nor fixed place of business, and without a license therefor, then and there being contrary to

the form of the statute in such case made and provided, and against the peace and dignity of the State of Indiana."

The question presented by this appeal concerns the defendant's right to a speedy trial as guaranteed by the Sixth Amendment to the United States Constitution, and by Article 1 of Section 12 of the Indiana Constitution.

I disagree with a part of the majority opinion wherein it states as follows:

"We note that in his appeal brief Appellant does *not* refer to the time between the filing of the first affidavit and the *nolle*. The transcript in this case does not reveal what proceedings took place that time under a different cause number. There is no sworn statement by Appellant or his counsel concerning that period of time. It is up to the Appellant to bring himself within the statute and he has not done so with this record. *Sullivan v. State* (1939), 215 Ind. 343, 19 N. E. 2d 739.

The Appellant himself does *not* urge that we count any time after August 10, 1965, the date of filing the second affidavit. If he were to do so he would be faced with showing the trial itself which took place on July 25, 1966, was not delayed by any dilatory motions by the Appellant. Rather he argues that no trial could take place *even if* it were had on the date of the filing of the second affidavit, therefore, what occurred after that date is not relevant here.

The *only* period relevant, then, is the period between the *nolle* on March 23, 1964, and the filing of the second affidavit on August 10, 1965. Appellee argues that this period should not be counted at all because there is no allegation that Appellant was held by recognizance during this period and, therefore, the statute does not apply. We do not agree. The right to a speedy trial is rooted in the Indiana Constitution, Art. 1, § 12, and the statute is an implementation of that right, *State ex rel. Uzelac v. Lake Criminal Court, supra.* The statute cannot operate to defeat the right or invalidly limit it. The value of the right to an accused must not be under-estimated. First, it sets a limit to the length of time he may be held by recognizance with all the restrictions on his life that being so held implies. A second important reason for requiring a speedy trial is that it insures a hearing while the incident

is fresh in the minds of the witnesses and before they become unavailable to testify. This will be especially useful to an accused because his witnesses will normally not have written reports and records with which to refresh their memories. This consideration applies equally to those *not* held by recognizance. Thirdly, under the rule we adhere to in this case, an accused, after a *nolle*, does not have to labor for an undue length of time under the threat of a renewed prosecution for the same offense.

We hold, therefore, that where a prosecutor *nolles* and later refiles an affidavit or indictment charging the same offense, the period between the *nolle* and the refiling will be counted, in resolving the speedy trial issue, as if the accused had been held by recognizance during that period."

The majority opinion is predicated on the theory that the only right appellant may exercise to obtain relief in the case at bar is predicated on the three term statute, Burns' 9-1403.

I point out that appellant was charged by affidavit filed May 23, 1963, with the offense of Violation of the 1935 Firearms Act, that charge was in Marion Criminal Court, Division 1, the charge therein was nolled without the knowledge or presence of appellant on March 23, 1964. Thereafter on August 10, 1965, in Marion Criminal Court, Division 2, appellant was again charged by affidavit with Violation of the 1935 Firearms Act. A reference to the two affidavits, *supra,* discloses the acts of the alleged violation to be the same, the affidavit was signed by the same person each time and was filed in the same court, but different divisions.

So far as disclosed by the record, appellant had not at any time fled the state, was not out of state at any time during the period from May 23, 1963 to August 10, 1965, but was available for trial during the period May 23, 1963 to March 23, 1964. The fact that during the period March 23, 1964 to August 9, 1965, the State of Indiana did not see fit to file a new affidavit charging appellant with this offense does not, in my opinion, relieve the State of the burden of granting him a speedy trial when it on August 10, 1965, filed the identical charge it first filed on May 23, 1963. I reason that by so

filing on August 10, 1965, the State in effect, voluntarily placed the appellant in position where the State by its delaying and harassing tactics deprived the appellant of a speedy trial under both the State and Federal constitutions.

If, as the Supreme Court of the United States held in *Smith v. Hooey* (1968), U. S., 21 L. Ed. 2d 607, incarceration of a defendant in a Federal Penitentiary did not excuse the State from making an effort to secure the defendant for state prosecution, what excuse exists for depriving a resident defendant of a speedy trial to determine his guilt or innocence?

I am of the opinion appellant was not and is not entitled to the relief he seeks under the three term statute (B.R.S. Sec. 9-1403). The reason for such opinion is that from March 23, 1964 to August 10, 1965, there was no charge for such violation pending and no forum existed wherein appellant's guilt or innocence of such charge could have been determined. Hence on its face appellant's action to implement his statutory relief must fail.

He has however a constitutional right to a speedy trial, superior to the statutory remedy here sought to be enforced. That right was properly called to the attention of both the trial and this Court by his motion for discharge in that he calls attention to his deprivation of his constitutional rights. He further therein shows the deprivation thereof was caused by the state by its nolle of the first affidavit and the long delay of well over a year in the filing of the second affidavit for the same offense charged in the first affidavit. The defendant in a criminal case has no control over the state in the manner, time or forum in and by which the state institutes or carries on the prosecution and cannot be charged with any delay caused by the state in the filing of criminal charges.

It is my opinion that appellant was entitled to a discharge on motion after the filing of the second affidavit more than

two years after the alleged commission of the alleged offense and more than a year after the nolle of the first affidavit. It would seem that we are in the case at bar confronted with harrassment and persecution of the appellant rather than a good faith prosecution.

The cause should be reversed and remanded to the trial court, with instructions to grant appellant's motion for a new trial and thereupon said court should enter an order dismissing said charge for violation of appellant's constitutional rights.

NOTE.—Reported n 246 N. E. 2d 181.